LIZZIE BINGEL

*v.*

FREDERICK H. VOLZ *et al.*

*Filed at Mt. Vernon March 28, 1892.*

1. WILLS—*correcting mistake in description of land devised.* A bill in equity will not lie to correct a mistake in the description of land devised in a will, by the substitution of another tract in the place of the one described; nor can this be done indirectly, under the pretense of construing the will.

2. SAME—*construed according to language used.* In construing a will, the intention to be sought for is not that which existed in the mind of the testator, but that which is expressed by the language of the will; and while reference may be made to surrounding circumstances for the purpose of ascertaining the objects of the testator's bounty or the subject of disposition, and thus place the court, as far as possible, where it may interpret the language used from the standpoint of the testator at the time he employed it, still the rule is inflexible that surrounding circumstances can not be resorted to for the purpose of importing into the will any intention not therein expressed.

3. A testator devised to his daughter seventy acres off the south side of the north-west quarter of section 16, which he never owned or claimed to own, instead of seventy acres off the south side of the south-west quarter of section 16, which he did own: *Held,* that the description in the will could not, by any rule of construction, be held to mean the land off the south side of the south-west quarter of section 16, and that parol evidence was inadmissible for the purpose of correcting the mistake.

4. SAME—*of the description of land therein.* Where a will or deed of land contains several descriptions or elements thereof, all of which are necessary to identify the property, it will be void if no property of the grantor or devisor can be found which will correspond with every part of the description; but if the intention, as gathered from the instrument, does not make it necessary to satisfy all the elements of the description, or if parts of the description are inconsistent with the other parts, and enough of them are consistent to identify the property, whatever is repugnant may be rejected and the deed or devise enforced under this construction.

APPEAL from the Circuit Court of Madison county; the Hon. B. R. BURROUGHS, Judge, presiding.

Messrs. HAPPY & TRAVOUS, for the appellant:

It is presumed that a testator, when he makes and publishes his will, intends to dispose of his whole estate, unless the presumption is rebutted by its provisions, or evidence to the contrary. *Higgins* v. *Dwen*, 100 Ill. 554; *Smith* v. *Smith*, 17 Gratt. 268; *Irwin* v. *Zane*, 15 W. Va. 646.

Where it is shown that the description of the subject of the devise, as it appears on the face of the will, is false in part, courts may look beyond the words of the will, and may place themselves in the position occupied by the testator when he executed the will, and with the aid of extrinsic evidence view the testator's affairs as he viewed them, in order to determine the intention of the testator from the language of the will, after excluding what is shown to be false. *Decker* v. *Decker*, 121 Ill. 341; *Moreland* v. *Brady*, 8 Ore. 303; *Morgan* v. *Burrows*, 30 Am. Rep. 717.

A latent ambiguity may arise when the will contains a misdescription of the subject, as, where the subject, as literally described, does not belong to the testator; and as this ambiguity only appears from extrinsic evidence, it may likewise be removed by extrinsic evidence. *Patch* v. *White*, 117 U. S. 210; *Decker* v. *Decker*, 121 Ill. 341.

The court, in construing the will, may occupy the testator's position when he made it. Evidence of the state of the testator's family; the state of his property; the relations of the testator with those claiming the property,—whether friendly, or otherwise; the state of his mind and feelings toward them, —as to whether reasons existed for preferring some to others; and, in short, of all collateral facts and circumstances which will enable the court to see and feel as the testator then saw and felt in regard to his affairs and those now claiming his bounty, is admissible. *Decker* v. *Decker*, 121 Ill. 341; *Cotton* v. *Smithwick*, 66 Me. 360; *Winkley* v. *Kaime*, 32 N. H. 268; *Smith* v. *Smith*, 4 Paige, 271; *Allen* v. *Lyons*, 2 Wash. 475;

*Black* v. *Richards,* 95 Ind. 184; *Moreland* v. *Brady,* 8 Ore. 303; *Vernor* v. *Henry,* 3 Watts, 385.

Where there is a latent ambiguity in the devise, the descriptive words of the subject of the devise being in part false, if, after striking out so much of the description as is false, enough remains in the will, interpreted in the light of surrounding circumstances when the will was made, to identify the premises, the devise will be good.   *Merrick* v. *Merrick,* 37 Ohio St. 126; *Moreland* v. *Brady,* 8 Ore. 303; *Patch* v. *White,* 117 U. S. 210; *Decker* v. *Decker,* 121 Ill. 341, and authorities there cited.

Mr. E. F. SPRINGER, and Messrs. WISE & DAVIS, for the appellees:

Extrinsic evidence is never admissible to alter, detract from or add to the terms of a will.   *Kurtz* v. *Hibner,* 55 Ill. 514; *Heslop* v. *Gatton,* 71 id. 351; *Starkweather* v. *American Bible Society,* 72 id. 59; *Bishop* v. *Morgan,* 82 id. 35; *Bradley* v. *Rees,* 113 id. 331; *Decker* v. *Decker,* 121 id. 356; Jarman on Wills, chap. 13, and notes.

In construing wills the cardinal principle is, the intention of the testator is to be gathered from the words as written in the will.   There is no latent ambiguity in this case.   The description of the land in the will is clear and certain.   A surveyor would have no difficulty in identifying and locating the land from the description in the will; hence, the decisions permitting oral evidence to explain a latent ambiguity have no application.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

On the 19th day of August, 1887, John Volz died, leaving him surviving his widow and six children, five sons and one daughter, and also leaving a last will and testament as follows:

"I, John Volz, of Alhambra, county of Madison and State of Illinois, farmer, being of sound mind, memory and under-

standing, do make and publish this my last will and testament, hereby revoking and making void all former wills by me at any time heretofore made:

"*First*—I wish my funeral expenses and debts, if any, paid at an early day.

"*Second*—I give, bequeath and devise to my wife, Barbara Volz, all my personal estate of every nature and kind, wherever situated, during her natural lifetime.

"*Third*—I give, bequeath and devise to my oldest son, John Volz, four hundred dollars, ($400,) to him paid by my son Joseph Volz, as hereinafter mentioned.

"*Fourth*—I give and bequeath and devise to my son Peter Volz one thousand dollars, ($1000,) to him paid by my son Joseph Volz, as hereinafter mentioned.

"*Fifth*—I give, bequeath and devise to my son Fritz Volz five ($5) dollars, to him paid by Barbara Volz, his mother, out of the personal property, as hereinafter mentioned.

"*Sixth*—I give, bequeath and devise to my son Joseph Volz my homestead of ninety (90) acres, described as follows, to-wit: The south one-half of the north-west quarter, containing eighty acres, more or less, and also ten (10) acres off of the north side of the north one-half of the south-west quarter (adjoining the south one-half of the north-west quarter,) all in section No. sixteen (16), township No. five (5), range No. six (6), west of the third principal meridian, Madison county and State of Illinois. My said son Joseph Volz to pay my said son John Volz four hundred dollars, and also my said son Joseph Volz to pay my said son Peter Volz one thousand dollars, within two years after my death, and that of my wife, Barbara Volz.

"*Seventh*—I give, bequeath and devise to my son Adam Volz five dollars, ($5,) to him paid by Barbara Volz, his mother, out of the personal property.

"*Eighth*—I give, bequeath and devise to my daughter, Elizabeth Bingel, seventy (70) acres off of the south side of

the north one-half of the north-west quarter of section No. sixteen (16), township No. five (5), range No. six (6), W. of third principal meridian, county of Madison and State of Illinois.

"*Ninth*—My wife, Barbara Volz, to retain or hold her dower in the real estate during her natural lifetime, receiving the rent from said real estate and to pay the taxes, after her death the before described real estate to remain as hereinbefore mentioned.

"In witness whereof I have signed and published and declared this instrument my will, at Alhambra, county of Madison, Illinois, this 13th day of August, A. D. 1887.

JOHN VOLZ.    (Seal.)"

The testator, at the time of his death, was the owner of 160 acres of land in Madison county, being the south half of the north-west quarter, and the north half of the south-west quarter, of section 16, township 5, north, of range 6, west. At that time he did not own, and so far as appears never had owned, the seventy acres off from the south side of the north half of the north-west quarter of said section 16, which by said will was devised to his daughter Elizabeth or Lizzie Bingel. Said daughter now insists that, by mistake of the draftsman who drew up the will, the word "north-west" was inserted instead of the word "south-west," in the devise to her, and that, in view of the remaining language of the will, and of the circumstances surrounding its execution, it should be construed as devising to her the south seventy acres of the north half of the south-west quarter of said section.

Three of the brothers of said Lizzie Bingel executed to her a quit-claim deed of the south seventy acres of the north half of the south-west quarter of said section reciting in said deed that it was "made for the purpose of removing the latent ambiguity in said will caused by using the word north-west instead of south-west in describing said land in said will." The widow of the testator having died, the two other brothers, Frederick and Adam Volz, filed their bill against their three

brothers and their sister, Lizzie Bingel, for a partition of said south seventy acres of the north half of the south-west quarter of said section, alleging that said tract was intestate estate, and that upon the death of their father, it descended to his six children as tenants in common.

The three brothers who had quitclaimed to their sister filed a disclaimer. Lizzie Bingel answered and filed her cross-bill, alleging that said John Volz, being the owner in fee of the seventy acres off from the south side of the north half of the south-west quarter of said section, by his last will and testament devised the same to her, by the designation and description of "seventy acres off the south side of the north one-half of the north-west quarter of section number sixteen," etc.; that said John Volz, at the time of making said will, was the owner in fee of the 160 acres of land first above described, and no other real estate, and that by said will he devised all of his real estate, except said seventy acres to Joseph Volz; that at the time of making said will, he did not own or suppose he owned or expected to become the owner of any interest in the tract to which the devise to said Lizzie Bingel, taken literally, would apply, and that he intended, by said will, to dispose of all his estate, real and personal, and supposed he had done so; that during his lifetime he was a farmer, and cultivated said 160 acres of land owned by him; that said Frederick and Adam Volz, long prior to the making of said will, went to do and work for themselves, and refused to stay with or assist their father in the cultivation and management of said land, or otherwise, and were disposed to be disobedient, shiftless and of unsteady habits, and to act in all things against their father's wishes; that John and Peter Volz, two of the other sons, also left their father a few years prior to his death and went to do and work for themselves, and were, at the time of making said will, residing in and engaged in business in the State of Kansas; that Joseph Volz, the remaining son, and the complainant in the cross-bill, although being past their

majority, remained with their father and mother and assisted, worked and cared for them up to the time of their respective deaths, and that for a number of years prior to the death of said John Volz, said Joseph Volz and the complainant were the only children who remained with or did anything for their said parents; that said last will and testament was written by Charles Reudy, as draftsman, at the request of John Volz, and that as a part of the instructions from said John Volz, said draftsman was given the deeds by which said John Volz held the land owned by him, from which to obtain the description of the portions of said land to be devised to Joseph Volz and to said complainant respectively in writing said will; that in said deeds said lands were correctly described, but that in copying said description therefrom into said will, said draftsman erroneously and unintentionally wrote the word "northwest" instead of "south-west" in describing the quarter of said section in which the land devised to said complainant lay, which error was overlooked and the said will was so executed devising said seventy acres so owned by said John Volz to the complainant by said faulty description; that while on the face of the will the subject matter of the devise is clear, yet by reason of the premises, there arises a latent ambiguity, and a cloud is thereby cast upon the complainant's title to said land; but that, by construing said will in the light of surrounding circumstances, it will appear that such devise referred to and vested in the complainant the lands owned by said John Volz and not devised to said Joseph Volz, and had reference to no other land or interest therein.

Said cross-bill further represented that, in order to remove any ambiguity or uncertainty, or any cloud upon the complainant's title, arising from the failure of the testator to fully and accurately describe said land devised to the complainant, three of the complainant's brothers had executed to the complainant a quit-claim deed of said land with the proper description.

Said cross-bill prays that evidence be heard touching the matters therein alleged, and in aid of the construction of said will, and that the court examine the language of the devise to the complainant in connection with the facts alleged, and construe and interpret its meaning in the light of surrounding circumstances at the time the will was made, and determine and define what lands, if any, the complainant took by said devise, and what land was referred to and intended by the language there used, and decree that said will, by the language employed, devised to the complainant the said seventy acres off from the south side of the north half of the south-west quarter of said section, and that said land is the property of the complainant, and that complainants in the original bill have no interest therein or title thereto.

Frederick and Adam Volz answered, denying the equities of the cross-bill, and the cause coming on to be heard on pleadings and proofs, evidence was introduced by the complainant in the cross-bill substantially supporting the allegations therein contained, and on consideration of the pleadings and evidence, the court entered a decree dismissing the cross-bill for want of equity, and awarding partition of said seventy acres of land in accordance with the prayer of the original bill. From that decree said Lizzie Bingel now appeals to this court.

The counsel for the appellant, while admitting that equity will not entertain a bill to reform a will, seems to us to be seeking to accomplish essentially the same thing under the guise of an attempt to construe the will. It is admitted that the terms of the devise to the appellant, on their face, are clear and unambiguous, and that they accurately describe a tract of land in existence, and capable of being readily identified, and which, if the testator had owned it, would have passed to the appellant by the terms of the will.

But it is insisted that when extrinsic evidence is applied to the devise, a latent ambiguity is raised, and that such evidence

may therefore be resorted to for the purpose of explaining the ambiguity and showing what land the testator intended to devise to the appellant. The purpose of construction, as applied to wills is unquestionably to arrive, if possible, at the intention of the testator, but the intention to be sought for is not that which existed in the mind of the testator, but that which is expressed by the language of the will. While in attempting to construe a will, reference may be made to surrounding circumstances, for the purpose of determining the objects of the testator's bounty, or the subject of disposition, and with that view, to place the court, so far as possible, where it may interpret the language used from the stand-point of the testator at the time he employed it, still the rule is inflexible, that surrounding circumstances can not be resorted to for the purpose of importing into the will any intention which is not there expressed.

On this subject, Mr. Jarman lays down the rule as follows: "As the law requires wills, of both real and personal estate, (with an inconsiderable exception), to be in writing, it can not, consistently with this doctrine, permit parol evidence to be adduced either to contradict, add to, or explain the contents of such will; and the principle of this rule evidently demands an inflexible adherence to it, even where the consequence is, a partial or total failure of the testator's intended disposition; for it would have been of little avail to require the will *ab origine* should be in writing, or to fence a testator around with a guard of attesting witnesses, if, when the written instrument failed to make a full and explicit disclosure of his scheme of disposition, its deficiencies might be supplied, or its inaccuracies corrected, from extrinsic sources." 1 Jarman on Wills, 409.

This court has long been committed to this doctrine. This question arose and was carefully considered in *Kurtz* v. *Hibner*, 55 Ill. 514. There a devise to Elizabeth Kurtz described an eighty acre tract in section 32, and a devise to James

Kurtz described a forty acre tract in section 31. Proof was offered that the testator, at the time of his death, owned but one eighty acre tract, that being described precisely as was the devise to Elizabeth Kurtz, except that it was in section 33 instead of section 32, and also that the devisee had been in the actual possession of said tract for a number of years, and upon the repeated promise of the testator in his lifetime that he would give her said tract, she had made valuable and lasting improvements thereon at her own expense. Evidence was also offered that James Kurtz, at the time of the death of the testator, was in actual possession of the 40 acre tract as the testator's tenant, and that the draftsman of the will, by mistake, inserted the word "one" after the word "thirty" instead of the word "two," thus devising to James land in section 31 instead of section 32. This evidence was excluded, and this court, in sustaining said ruling, said:

"The law requires that all wills of lands shall be in writing, and extrinsic evidence is never admissible to alter, detract from or add to the terms of the will. To permit evidence, the effect of which would be to take from a will plain and ambiguous language, and insert other language in lieu thereof, would violate the foregoing well established rule. For the purpose of determining the object of a testator's bounty, or the subject of disposition, parol evidence may be received, to enable the court to identify the person or thing intended. In this regard, the evidence offered afforded no aid to the court. The devise is certain both as to the object and subject. There are no two objects,—no two subjects."

The doctrine of this case has been repeatedly approved and re-affirmed in subsequent cases. Thus, in *Starkweather* v. *American Bible Society*, 72 Ill. 50, it was said: "The courts are so strict, that they will not permit the terms of a will to be altered, even when the devisor has, by mistake, misdescribed the land in a devise, by substituting that which could be clearly proved to have been intended." In *Bishop* v. *Mor-*

*gan,* 82 Ill. 351, the testator was the owner of 40 acres of land, being the south-east quarter of the north-east quarter of a certain section, and by his will he devised to his son the south-east quarter of said section, "containing 40 acres, more or less," and it was held, on the authority of *Kurtz* v. *Hibner, supra,* that the mistake in the description could not be corrected by reference to extrinsic evidence, and that such correction could not be made by reference to the words, "containing 40 acres, more or less," used in the will.   See also, *Heslop* v. *Gatton,* 71 Ill. 528; *Emmert* v. *Hays,* 89 id. 11; *Bowen* v. *Allen,* 113 id. 53; *Bradley* v. *Rees,* id. 327; *Decker* v. *Decker,* 121 id. 341.

We are aware that other courts whose opinions are entitled to the highest consideration have gone considerably farther than we have been disposed to do in holding, that mistakes of the character of the one presented here, constitute cases of latent ambiguity which may be explained, and, in effect, corrected by extrinsic evidence.   It can not be denied that decisions which so hold are based upon reasons which are at least plausible, and if the question were a new one in this State, we might feel disposed to give them serious attention. But the contrary rule has long been in force here, and has become a rule of property, and a change now by judicial construction, which must necessarily be given a retroactive operation, would have the effect of unsettling titles of very considerable value, which rest upon the rule which we have heretofore laid down.   We must therefore adhere to our former decisions, although in particular cases, the result may be to defeat the real intentions of testators, which, by mistake of those charged with drafting their wills, they have failed to adequately express.

But it is contended that the real intention of the testator in the present case, as shown by the extrinsic evidence, and his intention as expressed in the language of the devise, may be brought into harmony by rejecting a portion of the description of the land devised as repugnant, as was done in *Decker* v.

*Decker, supra.* The rule of construction here referred to is the one indicated by the familiar maxim, *falsa demonstratio non nocet,* and is applicable alike to the construction of deeds and wills. As applied to deeds, it is explained by Mr. Tiedeman in his Treatise on Real Property as follows:

"It is a general rule of construction that the deed should be so construed, that the whole deed may stand and be enforced. If this is impossible, and the description contains several elements or descriptions, all of which are necessary to the identification of the property intended to be conveyed, the deed will be void if no property of the grantor can be found which will correspond with every part of the description. But if the intention, as gathered from the deed, does not make it necessary to satisfy all the elements of the description, or if parts of the description are inconsistent with the other parts, and enough of them are consistent to identify the property intended by the parties to pass, whatever is repugnant is rejected, and the deed is enforced under this construction." Tied. on Real Prop. sec. 829.

Doubtless if there were repugnant elements in the description employed in the devise in question, and if the description, after rejecting a repugnant element, were complete in itself, so as to accurately and sufficiently describe the land intended to be described, that rule of construction might be adopted. But we are unable to see, and the ingenuity of counsel has been unable to point out, any way in which that rule of construction can be applied so as to work out the result sought to be attained. The description in the devise, as we have already seen, is in these words: "Seventy acres off of the south side of the north one-half, of the north-west quarter, of section No. sixteen, township No. five, range No. 6, W. of the third principal meridian, county of Madison and State of Illinois." If it be admitted that there are repugnant elements in this description, it is impossible to see what repugnant element can be rejected so as to leave a description which will apply

15—142 ILL.

to the land which the appellant claims. If we reject the words "north-west quarter," or "north-west," or "north," what remains does not apply to the land in question. The difficulty of the description, as it appears in the devise, is, that it substitutes "north-west" for "south-west," and the correction of the description, so as to make it apply to the right tract, requires not only that one of these words should be stricken out, but that the other should be inserted. It involves more than construction; it requires reformation, and in this State at least, courts of equity have persistently refused to entertain bills to reform wills.

We are of the opinion that the decree was proper, and it will therefore be affirmed.

*Decree affirmed.*