(No. 22110.—

ARLA W. HAMPTON, Appellant, *vs.* I. W. DILL, Exr. *et al.* Appellees.

*Opinion filed December 22, 1933.*

416

HERRICK, J., took no part.

TAYLOR, MAYER & SHIFRIN, HERBERT A. HAYS, SHEP-
ARD R. EVANS, and ISAAC K. LEVY, for appellant.

CHARLES E. FEIRICH, and JOHN K. FEIRICH, for ap-
pellees.

Mr. JUSTICE FARTHING delivered the opinion of the
court:

The appeal in this case from the circuit court of Jack-
son county is taken directly to this court because a free-
hold is involved. On December 30, 1932, appellant, Arla
W. Hampton, the son and only heir-at-law of the testator,
A. H. Hampton, deceased, filed his bill in the circuit court
of Jackson county to construe the will of his father. The
appellees, I. W. Dill, as executor with the will annexed
of Hampton's will, and Shekinah Lodge No. 241, A. F. &
A. M., of Carbondale, Illinois, (hereinafter for convenience
called the lodge,) were named as defendants. Appellees
filed a general demurrer to the bill. The demurrer was

sustained. The court then rendered a decree construing the will and dismissing the bill for want of equity.

It appears from the bill of complaint that A. H. Hampton, the testator, died in New York City on June 25, 1932. He was buried in the family burial lot at Carbondale, where his father, W. T. Hampton, had been buried. The will of Hampton was filed in the county court of Jackson county and duly proved and admitted to record. Upon the request of the appellee lodge, the appellee I. W. Dill was appointed administrator with the will annexed, by the county court. He qualified and is now acting as such executor. On September 7, 1907, Hampton married Harriet Bendit. Appellant is their only child and the only heir of the testator and was born January 13, 1909. His mother obtained a decree of divorce from Hampton, and although she re-married he remained unmarried after the divorce until his death. He left personal property valued at approximately $6000 and certain real estate in the city of Carbondale. The will is as follows:

"I, A. H. Hampton of the city of Carbondale, county of Jackson, State of Illinois, U. S. A., being of sound mind do make, publish and declare this my last will and testament.

"1st. I revoke all other wills and testamentary dispositions by me at any time heretofore made.

"2nd. I direct that my executor, hereinafter named, shall not be required to give bond or security for the proper disposition of her or their duties.

"3rd. I direct my executor to pay all just debts and funeral, for interment of my body in the burial lot owned by my father in Carbondale, Illinois, U. S. A., and in which the other members of my family are laid to rest, cremation and testamentary expenses as soon after my decease as conveniently can be arranged.

"4th. I give, devise and bequeath, if I should marry, to my beloved wife, in case she shall survive me, all of my estate, real, personal and mixed, of whatever character and

wherever situate, of which I shall die seized or possessed, or to which I shall be entitled at the time of my decease, or over which I shall then have any power of appointment, remaining after the payment of my said debts and expenses, to have and to hold in trust as a life estate and to use and enjoy the returns thereof so long as she shall live and remain unmarried, giving and granting to her full power to sell and re-invest the proceeds of sale and returns from my estate, but charged with the duty to conserve it and see that it shall prosper. On the death of my wife, in case I should marry, if she survives me and remains unmarried, it is my will that my estate shall be held in trust and administered by a committee of brother members in good standing appointed by the Shekinah Lodge No. 241, A. F. & A. M., of Carbondale, Illinois, U. S. A., and that they be specially charged with the duty of perpetually maintaining the burial lot of W. T. Hampton in exceptionally good state of repair and beautified by blooming flowers during their seasons. After paying all expenses in connection with the above named maintenance, the balance of the proceeds from the above mentioned stewardship must be used in charities approved by the Shekinah Lodge and/or for the good of the order.

"5th. I appoint as my executor, my said wife, if I should be married, but in case of her death, or marriage after my death, before the probate of this my will, or her inability to act at such time, I appoint in her place as my executors, a committee appointed by and from the Shekinah Lodge No. 241, A. F. & A. M., of Carbondale, Illinois."

In his bill appellant alleged that the lodge claimed all of the estate remaining after the payment of indebtedness and costs of administration, under the fourth clause of the will, to the exclusion of all other persons. It is next alleged that the fourth clause of the will constitutes an attempt on the part of the testator to create a perpetual and continuing estate in trust for the perpetual maintenance of a

burial lot and the perpetual and continuing use of any balance after caring for the burial lot, in charity, with power in the lodge to either select the charity or use the proceeds remaining for the lodge itself. This is said to be in violation of the rule against perpetuities, or, perhaps more properly, the rule against restraints on alienation. The additional allegation is made that any gift in trust provided by the fourth clause of the will was contingent upon the marriage of the testator, and that since he did not again marry the clause did not become operative. Therefore, since no provision was made by the testator for such an event, what remained after payment of his debts, funeral expenses and costs of administration descended as intestate property to the appellant, as his only heir. The bill charges that the fourth clause of the will is ambiguous, and prays that the will be construed to give the testator's entire net estate, as intestate property, to the appellant.

The trial court rendered a decree by which it held that the attempt to create a trust for the maintenance of the cemetery lot was void within the rule against perpetuities and that the lodge was entitled immediately to the entire net estate and sustained the general demurrer and dismissed the bill for want of equity.

The appellees contend that "under the issue made by the bill of appellant and the demurrer of appellees the only question to be determined was whether or not appellant was entitled to the entire estate  If he was not so entitled he had no interest whatever in the estate, and therefore his bill was properly dismissed for want of equity." No question is raised by the parties as to any part of the will except the fourth clause. It is necessary, in order properly to determine the propriety of the trial court's action in sustaining the demurrer, to ascertain what, if any, effect should be given the clause in controversy. In construing a will the primary object is to ascertain, if

possible, the intention of the testator. His intention must be determined by the language of the will itself and not from any surmise that he used the language to express an intention or meaning he had in his mind which he failed to express. If he has overlooked a condition which he probably would have provided against had he thought of it, the court cannot guess which provision he would have made and read it into his will on the presumption that he would naturally have made such a provision if he had thought of it. *LaRocque* v. *Martin*, 344 Ill. 522.

While it is true that there is always a presumption against intestacy, either in whole or in part, where a testator has attempted to dispose of property by will, this is only a presumption, and it does not warrant the court, under the guise of construing a will, to add provisions in the place of those which have been omitted. (*Foss* v. *State Bank and Trust Co.* 343 Ill. 94; *Pontius* v. *Conrad*, 317 id. 241; *Illinois Land and Loan Co.* v. *Bonner*, 75 id. 315; Page on Wills, (2d ed.) par. 816.) And such presumptions cannot be indulged in to supply an omission made by oversight where no language is used to show an intention on the part of the testator to dispose of the property. *Minkler* v. *Simons*, 172 Ill. 323; *Magnuson* v. *Magnuson*, 197 id. 496.

It is an admitted fact that Hampton, the testator, did not re-marry after he made his will. It will be noted that in the first part of the fourth clause of the will he used the words, "I give, devise and bequeath, if I should marry, to my beloved wife, in case she shall survive me," etc., and in the latter part of this clause, "on the death of my wife, in case I should marry, if she survives me and remains unmarried, it is my will that my estate shall be held in trust," etc. No disposition of the testator's property was made in the will in the event that he did not marry. He might have attempted a somewhat similar disposition to that contained in the latter part of this clause and he might

equally as well have intended a different disposition, and in our view of the matter there is no word contained in the clause or in the entire will to indicate what would have been his desire.

The appellees contend that if Hampton had married this would have revoked his will, and that, therefore, the construction of clause 4 should be that which would give the entire net estate to the lodge in order to prevent intestacy and give effect to the fourth clause of the will. A fundamental and familiar rule of construction is to ascertain the intention of the testator from a consideration of the whole will, and then to give such intention effect if it does not contravene some established rule of law or of public policy. The intention must first be found and determined, and whether it can legally be carried into effect is a secondary consideration. *Hollenbaugh* v. *Smith,* 296 Ill. 558; *Abrahams* v. *Sanders,* 274 id. 452; *Smith* v. *Dellitt,* 249 id. 113.

Nor can we agree with the appellees in their argument that the expressions with reference to testator's wife if he should marry, and the prospect of marriage, form only an inducement for making the will and not a condition upon the happening of which this clause would have become operative.

The attempted creation of a trust to provide for the maintenance of the family burial lot was void because it restrained the alienation of the property of the testator for too long a time. We said in *Mason* v. *Bloomington Library Ass'n,* 237 Ill. 442: "The law is well settled in this country that a perpetual trust cannot be created to take care of a private burial lot unless the creation of such trust is authorized by statute," citing 6 Cyc. 918, *Bates* v. *Bates,* 134 Mass. 110, and other cases. The trial court was not in error in its holding in this regard. But the plan or scheme of the testator, in our opinion, is not divisible. It was his intention that the whole of the earn-

ings of the corpus of the trust, if necessary, should be used to maintain the burial lot in an extremely high state of repair and ornamentation, with flowers in their season, and only such excess as there might be after this was done was to go to charities or to the lodge itself. It must be taken as settled in this State that where certain provisions of a clause of a will are valid and others invalid as in violation of the rule against perpetuities, and all are parts of one general scheme, so that the valid and invalid may not be separated without a failure of the scheme of the testator, then the whole clause becomes invalid and void. (*Foley* v. *Nalley*, 351 Ill. 194; *Barrett* v. *Barrett*, 255 id. 332; *Dime Savings and Trust Co.* v. *Watson*, 254 id. 419.) Even if we were to hold that the gift was not conditioned upon the testator's re-marriage, the trustees would have to take the title in trust for the heirs of the testator, since his plan of distribution failed and could not be separated. In a similar situation in *Ward* v. *Caverly*, 276 Ill. 416, where the trial court had construed the will, sustained a demurrer and dismissed the bill for want of equity, as was done in this case, we said: "The court undoubtedly erred in first construing the will and then dismissing the bill for want of equity. If the bill should have been dismissed for want of equity there would be no reason for construing the will."

The trial court also erred in assessing the costs against the complainant, Hampton. Under the holding in *Ward* v. *Caverly, supra,* the costs should have been assessed against the estate.

The decree of the circuit court will be reversed and the cause remanded, with directions to that court to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE HERRICK took no part in this decision.