(No. 22835.—)
JAMES M. NORTON *et al.* Appellees, *vs.* CARRIE NORTON JORDAN *et al.*—(LILLIAN DEFOREST *et al.* Appellants.)

*Opinion filed April 17, 1935—Rehearing denied June 11, 1935.*

420

GEORGE C. OTTO, for appellants.

CUTTING, MOORE & SIDLEY, (MERRITT C. BRAGDON, JR., and WILLIAM H. AVERY, JR., of counsel,) for appellees.

Mr. JUSTICE HERRICK delivered the opinion of the court:

A decree entered by the superior court of Cook county construed the last will and testament of Harriet L. Milligan. From that decree fourteen defendants prosecute this appeal, a freehold being involved.

Harriet L. Milligan, a widow and a resident of the city of Chicago, died testate on August 25, 1932. She left no descendant surviving and her heirs were James M. Norton and Carrie Norton Jordan. The testatrix's estate consisted of a substantial amount of personal property and one parcel of real estate. Her last will and testament, dated July 26, 1929, and a codicil thereto dated August 20, 1932, were admitted to record by the probate court of Cook county. By the second section she made thirty-two specific bequests, aggregating $104,000, to relatives, friends and charities; by the fourth she bequeathed the residue of her estate to nine of the legatees named in the second paragraph of her will, and by the fifth she appointed Frank W. Lawton executor. The codicil reduced the bequests of three legatees and increased that of one, making the total amount of specific bequests $84,500. The controversy in the present case arises over the construction of a portion of the second section and the entire fourth section of the will, as follows:

"*Second.*—I give and bequeath ten thousand dollars to my cousin Carrie Norton Jordan, of Montreal, Canada, and, one thousand dollars to Beatrice Jordan Dever, who can be found through inquiry of said Carrie Norton Jordan, and, ten thousand dollars to my cousin Richard Norton, who can be found, I believe at 247 Girouard street, Montreal, Canada, and, one thousand dollars to the present Mrs. Richard Norton, wife of the said Richard Norton, and, one thousand dollars to Florence Norton, and, one thousand dollars to Isabel Norton, both of whom can be found through said Richard Norton." * * *

"*Fourth.*—I give, devise and bequeath all of the rest, residue and remainder of my property, of what nature soever and wherever situate, including all lapsed legacies, to the said Carrie Norton Jordan, said Beatrice Jordan Dever, said Richard Norton, said Florence Norton, said Isabel Norton, said Lillian DeForest, said Florence Phillips,

said Frank W. Lawton, and said George C. Otto, share and share alike. In event of the death of any one or more of said last named nine persons, in my lifetime, then his or her share, in each such instance, shall go and belong to those of the said nine persons surviving at my death, share and share alike."

On August 12, 1933, James M. Norton and Isabella Edwards Norton, his wife, filed in the superior court of Cook county a bill, which was later followed by an amended bill, for the construction of the will of the former's cousin, Harriet L. Milligan. Thirty of the thirty-two legatees, being all of the legatees excepting Richard Norton and Mrs. Richard Norton, named in the second section of the will, eight of whom, including the executor and his attorney, also are residuary legatees under section 4, were made parties defendant. Later, by the amendment to the bill, Richard Henry Norton, a nephew of James M. Norton, and Susan Lawrie Norton, his wife, were made additional parties defendant. These additional defendants disclaimed any interest in the legacies and bequests and by their bill admitted the allegations of the bill as amended. By their bill as amended the complainants claimed that the specific legacies of $10,000 and $1000 to "Richard Norton" and the "present Mrs. Richard Norton" were intended for the complainants, and the complainant first named was also entitled to one-ninth of the residuary estate devised to "Richard Norton," the one-ninth being devised to him by the name of "Richard Norton." The complainants further alleged that they had requested the executor and his attorney to file a bill to construe the will and to obtain the directions of the court as to the proper distribution of the legacies to "Richard Norton" and the "present Mrs. Richard Norton," but that they had neglected and refused to do so. Numerous defendants, including the executor and his attorney, filed answers denying the allegations of the bill and denying that the complainants were entitled to the

relief or any part of the same. The decree granted the relief sought, directing the executor to pay and deliver such sums and property to the complainants, upon the distribution of the estate, in satisfaction of such bequests as the assets would permit. By the decree the court also found, among other things, that the complainants were natural objects of the bounty of the testatrix; that she knew no person by the name of "Richard Norton" or "Mrs. Richard Norton" living at the time of the execution of her last will nor at the time of her death; that if the word "Richard" be stricken from the will wherever it appears, sufficient language would remain to identify James M. Norton as a legatee of the sum of $10,000 and a devisee of one-ninth of the residuary estate, and to identify Isabella Edwards Norton as a legatee of the sum of $1000 under the will. By its decree the court then construed the will to mean that the testatrix gave, devised and bequeathed to James M. Norton the sum of $10,000 under the second section of the will, one-ninth of the residue of the estate under the fourth section, and $1000 to Isabella Edwards Norton under the second section. The decree directed the executor, upon the distribution of the estate, if sufficient to pay in full all specific and general legacies, to pay and deliver $10,000 to James M. Norton, $1000 to his wife and one-ninth of the residue to the former, and in the alternative, if insufficient to pay in full all the specific and general legacies in the will, to pay and deliver to the complainants the same proportion of their specific legacies as shall be paid upon the other pecuniary legacies contained in the will. The court fixed the fees of the solicitors for the complainants at $3000 and for the defendants at $2500 and directed the executor to pay these fees, and further directed him to pay "the master's fees on the reference herein, which said master's fees are hereby taxed at the sum of two hundred and seventy-seven dollars ($277)."

James M. Norton, Carrie Norton Jordan, and Richard Lee Norton the second, were brothers and sister. Through their mother's blood they were first cousins of the testatrix and were children of Richard Lee Norton the first, and his wife. Richard Henry Norton, one of the defendants, is a son of Richard Lee Norton the second. From the evidence it appears that there were no other persons named Richard Norton, either relatives of or strangers to the blood of the testatrix, who might have been the objects of her bounty. The wife of the first Richard Lee Norton was an aunt of Mrs. Milligan. The first Richard Norton was, therefore, related to her only by marriage. Both the aunt and her husband had been dead for many years prior to the execution of the will. Their son Richard Lee Norton died April 4, 1918, and his wife died January 13, 1919. Prior to January 17, 1927, Mrs. Milligan had knowledge of the deaths of the four persons last named. Testatrix was not personally acquainted with either Richard Henry Norton (commonly known as Harry Norton) or his wife.

In prior wills dated January 17 and 18, 1927, respectively, Mrs. Milligan made a bequest of $10,000 to "my cousin Richard Norton, who can be found, I believe, at 29 Chesterfield avenue, Montreal, Canada," and $500 each to Florence and Isabel Norton, "both of whom can be found through said Richard Norton." The complainants and their daughters Isabel and Florence, on the days last mentioned and for some time immediately prior thereto, resided at the address designated in the wills. On the day the third and last will was executed these same four persons resided at 247 Girouard street, the address specified in the will as the place where "Richard Norton" could be found. Neither Richard Lee Norton the first, his wife, Richard Lee Norton the second, his wife, Richard Henry Norton or his wife, ever resided at either 29 Chesterfield avenue or 247 Girouard street, in Montreal. Mrs. Milligan had visited the complainants and their daughters at

each of these residences and in consequence knew their street address when she executed each of the three wills. She had known the complainants more than thirty years, had visited them in the city of Quebec, where they resided prior to 1925, and at Montreal, and they, in turn, on several occasions had visited the testatrix at her home in Chicago. George D. Milligan, the husband of the testatrix, died in 1926, and thereafter she visited with James M. Norton and his family and Carrie Norton Jordan and her family each year on her way to Europe. In 1928 Mrs. Milligan accompanied the complainants in their automobile from Chicago to Montreal and was their guest at 247 Girouard street. When in Montreal she stayed either at a hotel or at the houses of her cousins James and Carrie. She visited the complainants again in 1929, in October, 1930, in 1931, and in August, 1932.

The testimony of several witnesses establishes the fact that when the testatrix referred to the complainant James M. Norton by his Christian name she habitually and customarily called him "Richard," although at times she corrected herself and called him by the name of "James" or "Jimmie." This habit of hers continued over a long period of years, but the evidence gives rise to the irresistible conclusion that James M. Norton was to the testatrix "Richard Norton;" that for reasons best known to her she called him "Richard," but that when she used the name "Richard" she applied the same to the complainant James M. Norton and to no other person. The relations between the testatrix, James M. Norton and his wife for years had been the most kindly and affectionate.

Mrs. Milligan corresponded with Isabella Edwards Norton and the two daughters of the complainants, made gifts to each of them, including articles of clothing and jewelry, and money in the form of bank checks to Mrs. Norton and the daughters. In particular, in December, 1929, she purchased from a bank in Chicago a cashier's check for

$15 which she directed to be made payable to the order of "Mrs. Richard Norton," and enclosed it, with a letter to Isabella Edwards Norton, in an envelope addressed to "Mrs. Richard Norton" at 247 Girouard street, Montreal. In this letter she directed that the proceeds of the check be divided among the payee and her two daughters, Florence and Isabel, as Christmas gifts. Mrs. Norton cashed the check, and both she and her daughter Isabel acknowledged its receipt in letters to Mrs. Milligan, and the latter, in a reply, indicated her approval of the use to which they had applied the money. Other cashier's checks were purchased by the testatrix and sent in the same manner, some payable to "Mrs. Norton" and one payable to "Mrs. James M. Norton."

The fourteen legatees who defended the bill seek to reverse the decree with the exception of that portion relating to the solicitors' fee and expenses allowed to them. In particular they make the contention that the chancellor erred in finding sufficient language would remain in the will to identify James M. Norton and his wife, the appellees, as legatees under the second section, and the former a devisee under the fourth, if the word "Richard" be stricken wherever it occurs. To sustain the decree the appellees contend (1) that the misnomer of a legatee will not render a bequest void if the name and description used in a will, as applied to the facts established by extrinsic evidence, identify the object of the bounty of the testator; and (2) that where the name or description of a legatee does not fit any person in all particulars but part of it fits a person shown by extrinsic evidence to be a likely object of the testator's bounty, the part of the description which does not apply to such person will be eliminated if enough words remain definitely to identify him.

The cardinal rule of testamentary construction is to ascertain the intention of the testator and to give it effect, unless the testator attempts to accomplish a purpose or to

make a disposition contrary to some rule of law or public policy. (*Dahmer* v. *Wensler,* 350 Ill. 23; *McCormick* v. *Hall,* 337 id. 232; *Brill* v. *Green,* 316 id. 583; *Coon* v. *McNelly,* 254 id. 39; *Felkel* v. *O'Brien,* 231 id. 329.) A testator's intention must be obtained from the words of the will itself. (*Hampton* v. *Dill,* 354 Ill. 415; *Bond* v. *Moore,* 236 id. 576.) To arrive at his intention as expressed by the language of the will, and not an intention which existed in his mind apart from such language, is the purpose of testamentary construction. (*Dahmer* v. *Wensler, supra; McCormick* v. *Hall, supra; Bond* v. *Moore, supra; Lomax* v. *Lomax,* 218 Ill. 629; *Engelthaler* v. *Engelthaler,* 196 id. 230.) While parol evidence is not admissible to show what a testator intended to write, it may be admitted where its effect is merely to explain or to make certain what he has written. In ascertaining the testator's intention the words of the will are to be read in the light of the circumstances under which the will was made, and to that end the court may put itself in the place of the testator for the purpose of determining the objects of the testator's bounty or the property which is the subject of disposition. (*Dahmer* v. *Wensler, supra; LaRocque* v. *Martin,* 344 Ill. 522; *Bimslager* v. *Bimslager,* 323 id. 303; *Coon* v. *McNelly, supra.*) It is proper in such an inquiry to take into consideration all the circumstances under which the will was executed, including the nature, extent and condition of the testator's property as well as his relations to his family and the beneficiaries named in the will. (*Dahmer* v. *Wensler, supra; Bingel* v. *Volz,* 142 Ill. 214.) The rule, however, is inflexible that for the purpose of importing into the will an intention which is not there expressed, proof of surrounding circumstances is inadmissible. *Dahmer* v. *Wensler, supra; Bingel* v. *Volz, supra.*

There is a latent ambiguity in the will in controversy. From the will it may be that a cousin Richard Norton

resided at 247 Girouard street, Montreal, who at the time of the execution of the will or at the death of the testatrix was married to a "present" Mrs. Richard Norton. The ambiguity arises when it is ascertained from extrinsic evidence that the will does not accurately designate any person in all particulars. The appellees, however, exactly fit all of the names and descriptions given in the will except the Christian name "Richard." From the testatrix's point of view both the names and the description given in the will apply to the appellees.

Latent ambiguities may be either cases of equivocation or misnomer and misdescription. The former type of latent ambiguity arises when a testator names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that answer the name or description. The second type occurs when the will contains a misnomer or misdescription of the object or subject, as where extrinsic evidence discloses there is no such person or thing in existence, or, if in existence, the person is not the one intended, or the thing does not belong to the·testator. Extrinsic evidence, being explanatory and incidental, is admissible where there is a latent ambiguity— not for the purpose of adding to or detracting from the provisions of the will but to determine the existence or non-existence of the ambiguity itself, and for the additional purpose of enabling the court to view the will in the light of the facts and circumstances surrounding the testator at the time the will was made, to ascertain his intention and the meaning of the words used. (2 Schouler on Wills, Executors and Administrators, (6th ed.) sec. 937; Thompson on Construction of Wills, secs. 124, 125; *Gilmer* v. *Stone,* 120 U. S. 586, 31 L. ed. 734; *Collins* v. *Capps,* 235 Ill. 560; *Whitcomb* v. *Rodman,* 156 id. 116; *Woman's Union Missionary Society* v. *Mead,* 131 id. 338; *Decker* v. *Decker,* 121 id. 341.) It necessarily follows that as a latent ambiguity is only disclosed by extrinsic evi-

dence, if removable it may be removed by the same method. (Thompson on Construction of Wills, sec. 125; *Patch* v. *White,* 117 U. S. 210, 29 L. ed. 860; *Decker* v. *Decker, supra.*) Where the ambiguity consists of a misnomer or misdescription, as in the present case, the false words may be stricken, and if after these words are discarded a sufficient description remains, when interpreted in the light of surrounding circumstances, to identify the object or subject of the testator's gift with certainty, the will may be read and construed with the false words eliminated. (1 Page on Wills, (2d ed.) sec. 915; *Patch* v. *White, supra; Bimslager* v. *Bimslager, supra; Gano* v. *Gano,* 239 Ill. 539; *Collins* v. *Capps, supra; Felkel* v. *O'Brien, supra; Huffman* v. *Young,* 170 Ill. 290; *Whitcomb* v. *Rodman, supra; Decker* v. *Decker, supra.*) Conversely, if the rejection of the repugnant words does not leave a description which, when read in the light of circumstances surrounding the testator at the time of the execution of the will, is sufficient to afford a basis for identifying the object or subject of the gift, the court will not reform the will or correct a mistake by inserting or changing words. *Stevenson* v. *Stevenson,* 297 Ill. 338; *Graves* v. *Rose,* 246 id. 76; *Lomax* v. *Lomax, supra; Bingel* v. *Volz, supra.*

The appellants place reliance upon *Kurtz* v. *Hibner,* 55 Ill. 514, and assert that it is directly in point and determinative of the principal issue presented for decision. It was not contended in the *Kurtz case* that by rejecting the false part of the description sufficient descriptive words remained to identify the lands which the testator intended to devise. The only means of identification furnished by the description in the will lay in the numbers of the sections, and when they were discarded the devises failed for uncertainty. Nothing was left by which the lands intended to be devised could be located within any one of the thirty-six sections in the township designated unless new numbers of sections could be added to the descriptions. That situ-

ation does not obtain in the present case. If the word "Richard" is stricken in the second section of the will this description of the legatee will remain, "my cousin . . . . . . . . Norton, who can be found, I believe, at 247 Girouard street, Montreal, Canada." It is unnecessary to add one word to this will to determine the objects of the testatrix's bounty. When the testatrix made a bequest to her cousin at 247 Girouard street, Montreal, the testatrix was unquestionably referring to James M. Norton, one of the appellees.

The appellants argue that because two persons, who they assert were intended beneficiaries under the second and fourth sections of Mrs. Milligan's will, were dead when she executed it does not tend to show a latent ambiguity or affect the accuracy of the designation of the beneficiaries named. To sustain this argument reliance is placed principally on *McNamara* v. *McNamara*, 293 Ill. 54. In that case the second clause of the testator's will gave, bequeathed and devised to his son, Lawrence, and his daughters, Allie, Kate, Annie, Esther and Maude, "or to their children or legal heirs in case of the death of either one of the above named six children, to each one an undivided one-sixth part of the following described real estate." It was contended that as Annie was dead prior to the execution of the will the devise to her was void, but the court decided adversely to such contention. There was no question of misnomer or misdescription or other latent ambiguity in the *McNamara case*. The will there in controversy clearly and accurately described the deceased children of the testator in all particulars. The language employed by him indicated that he knew he was referring to a child who was dead. The obvious purpose of the reference to Annie was to assure an equal division *per stirpes*. The decision is not out of harmony with any of the principles applied here. Although the names and descriptions used in Mrs. Milligan's will do not accurately fit any persons,

the language used and the surrounding circumstances conclusively show she was referring to living persons. The "present" Mrs. Richard Norton, and the language "can be found, I believe, at 247 Girouard street, Montreal, Canada," are expressions not used with respect to decedents. Nor would the testatrix direct that Isabel and Florence, the daughters of the appellees, be located through a dead uncle. The testatrix made a similar direction with respect to Beatrice Jordan Dever, stating that she could be found through Carrie Norton Jordan, who was her mother. "Richard Norton" and the "present Mrs. Richard Norton" were not named as ancestors for the purpose of dividing the estate among classes. She could not speak presently of the wife of a cousin when she knew that both were dead, and when she mentioned the names "Richard Norton" and the "present Mrs. Richard Norton" she clearly had in mind only the appellees. When the false words are stricken and the will is read in the light of the circumstances under which it was written, the conclusion is inescapable that the testatrix intended her cousin James M. Norton and his wife to have the legacies bequeathed to "Richard Norton" and the "present Mrs. Richard Norton."

The appellants further contend that the court erred in allowing solicitors' fees and expenses to the appellees. The allowance of the solicitor's fees and expenses to the appellants is not challenged. No complaint is made as to the amount of the allowance but the sole issue is one of liability. It was necessary for the appellees to obtain a construction of the will in controversy and the fees were properly allowed. (*Schneller* v. *Schneller,* 356 Ill. 89; *McCormick* v. *Hall, supra.*) The amount to be allowed rests in the discretion of the chancellor, and in the absence of proof of an abuse of his discretion we cannot interfere. *Ingraham* v. *Ingraham,* 169 Ill. 432.

Complaint is also made with respect to the allowance of master's fees. The master in chancery to whom the

cause was referred properly itemized his claim for the taking of testimony. The remainder of his claim is stated to be, "For obtaining files, docketing cause, setting same for hearing, examination of pleadings, reading testimony, preparing conclusions of fact and law and drawing report, etc., $200." The claim of the master should show the time he was necessarily employed in the examination of questions of law and fact and in preparing his report of such findings and conclusions. (*Wirzbicky* v. *Dranicki,* 235 Ill. 106; *Fitchburg Steam Engine Co.* v. *Potter,* 211 id. 138.) The propriety of an analogous claim of $200 for "hearing arguments and examining questions in issue and reporting conclusions thereon" was presented for decision in *Wirzbicky* v. *Dranicki, supra,* and with respect to which this court said: "Where, as in this case, a charge is made by a master in a lump sum, and there is no statement made by the master from which we can ascertain the amount of time he claims was consumed in the performance of each of the duties covered by that charge, we will not in this court enter upon an independent examination of his report for the purpose of attempting to state correctly the items covered by the charge, the time given by the master to each service and the amount that should be allowed on account of each, in order that he may be decreed the sum that could properly have been allowed him had he complied with the law in reference to stating his claim. In such instance nothing will be allowed by us on account of services covered by the gross charge."

The decree of the superior court is modified by striking therefrom the provision taxing the master's fees at $277 and by inserting therein the following language, "Seventy-seven dollars for taking and reporting testimony at fifteen cents per folio. No other fees will be allowed him." In all other respects the decree is affirmed.

*Decree modified and affirmed.*