ADAM BRECKHEIMER *et al.*, Petitioners, *v.* VIRGIL A. KRAFT, as Executor of the Last Will of CLARA B. JOHNSON, Deceased, *et al.*, Respondents-Appellees—(MABEL REIHS (formerly MABEL SCHNEIKERT), Respondent-Appellant.)

(No. 54808;

First District—June 24, 1971.

E. Kenneth Friker, and Klein, Thorpe, Kasson & Jenkins, both of Chicago, and Virgil W. Kalchthaler, of Sheboygan, Wisconsin, for appellant.

Donald L. Johnson, of Chicago, for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Clara Johnson died on April 11, 1965, leaving a will drawn nine days earlier. Her will bequeathed her residuary estate in equal shares to "my

beloved nephew Raymond Schneikert and Mabel Schneikert his wife, of Plymouth, Wisconsin."

At the time the will was executed, Raymond Schneikert's wife was not named Mabel. A former wife bore that name but she had remarried and resided with her husband, Albert Reihs, in Sheboygan, Wisconsin. Schneikert also had remarried; his wife's name was Evelyn and lived in Plymouth.

This litigation arose as a result of a petition, filed by relatives, contesting the decedent's will on the ground that the residuary bequest was invalid because of the misnomer. The Schneikerts filed an answer seeking construction of the bequest in their favor and Mabel Reihs filed an answer seeking construction in her behalf. This appeal is by Mabel Reihs from the judgment in favor of the Schneikerts. As grounds for reversal she contends that the court misconstrued the will and erred in permitting testimony of the decedent's intentions.

■■ When a will contains a latent ambiguity extrinsic evidence may be received to determine the existence of the ambiguity. Since the ambiguity is disclosed by extrinsic evidence it may be removed by such evidence. To assist the court in ascertaining what the language in the will means, it is proper in such an inquiry to take into consideration the facts and circumstances surrounding the testator at the time the will was executed and his relation with his family and the beneficiaries named in the will. *Norton v. Jordan* (1935), 360 Ill. 419, 196 N.E. 475.

■■ The evidence disclosed a latent ambiguity in Mrs. Johnson's will arising from the existence of two women neither of whom fit completely the name or descriptions given in its residuary clause. Mabel was not the wife of Raymond Schneikert and did not live in Plymouth. Evelyn was his wife and lived in Plymouth but she was never known as Mabel. When this ambiguity was revealed the court properly heard further evidence in an effort to resolve it.

At the hearing Mabel Reihs testified that she married Raymond Schneikert in 1935 and was divorced from him in 1952. She kept the name of Schneikert until her marriage to Albert Reihs in 1960. She met Mrs. Johnson after her first marriage, saw her occasionally and had some correspondence with her. She visited her once for a two-week period and again at the time of Mr. Johnson's death. On one of these occasions she was separated from Raymond because of marital difficulties. Mrs. Johnson stayed at her home on one occasion. From 1952 until 1964 she neither saw nor corresponded with Mrs. Johnson and did not know of her death until two years after she passed away. The last time Mrs. Reihs saw her was in 1964 at a birthday party in Sheboygan. Mrs. Johnson came to the party with Raymond and Evelyn Schneikert and left with

them. About ten people were there, including Albert Reihs. He and Mrs. Reihs sat next to each other but, according to her, he was not introduced to Mrs. Johnson. Mrs. Reihs stated that Mrs. Johnson knew she had remarried but, to the best of her knowledge, she had not been informed of her new name or residence in Sheboygan.

A sister of Mrs. Reihs who was at the party testified that Mrs. Johnson said to her: "Mabel sure is a nice girl."

Evelyn Schneikert testified that she married Raymond in 1959 and they resided in Plymouth. She first met Mrs. Johnson at a funeral in 1964. In their subsequent correspondence Mrs. Johnson addressed her as "Dear Evelyn"; she never referred to her as Mabel. They also spoke over the telephone. She learned that Mrs. Johnson was ill and received a letter from one of her neighbors dated March 30, 1965 saying that Aunt Clara was sick and wanted her to come and straighten out her affairs. The letter was addressed to "Mrs. Ray Schneikert." [It appears that Evelyn Schneikert came to Chicago in response to this letter. Mrs. Reihs' attorney stated three times in his final argument in the trial court that Mrs. Schneikert visited Mrs. Johnson in the hospital during her last illness.]

Mrs. Johnson's pastor and the attorney who drew her will also testified. The pastor had known her for four years. The attorney, who was a friend of the pastor, was unacquainted with her. They said that the will was prepared at the hospital. After satisfying himself as to her competency, the attorney inquired who was to receive her estate and she informed him she wanted an old friend to have a thousand dollars and the balance was to go to her nephew and his wife. The attorney asked the nephew's name and she replied "Raymond Schneikert." The attorney then requested the wife's name. Mrs. Johnson thought a second or two and said "Mabel." The attorney prepared the will on his portable typewriter, read it to the decedent and had it executed. Counsel for Mrs. Reihs objected to the testimony of both witnesses insofar as it pertained to the declarations of Mrs. Johnson and her instructions to her attorney.

■■ From this evidence and the language of the will the trial court concluded that Mrs. Johnson intended to bequeath the remainder of her estate to Raymond Schneikert and "his present wife." The purpose of construing a will is to ascertain the intention of the testator as expressed in the language of the will and give it effect. (*Rosenthal v. First National Bank of Chicago* (1940), 40 Ill.2d 266, 239 N.E.2d 826; *Dahmer v. Wensler* (1932), 350 Ill. 23, 182 N.E. 799.) The intention must be determined from the words of the will itself (*Hampton v. Dill* (1933), 354 Ill. 415, 188 N.E. 419) and not from an intention which existed in the testator's mind apart from such words. (*Bond v. Moore* (1908), 236 Ill. 576, 86 N.E. 386.) While the intention expressed in the will must prevail,

the court is not compelled to disregard the circumstances under which the will was made but should endeavor to place itself in the situation of the testator in order to understand the language in the sense in which it was used. (*McDole v. Thurm* (1916), 276 Ill. 200, 114 N.E. 542.) Although the name and descriptions in Mrs. Johnson's will do not accurately fit either Evelyn Schneikert or Mabel Reihs, both the language used and the surrounding circumstances indicate that she was referring to Evelyn Schneikert.

■■ The word "wife" is descriptive of a particular individual. If a bequest is made to the wife of a certain person, and there is nothing in the will indicating the contrary, the term "wife" will apply to the person who answers that description on the date of the will. (Thompson, The Law of Wills, 3rd ed., sec. 263.) The same author states, in section 262:

> "There is no rule in the construction of wills which prefers a name to a description. * * * [I]f there is no one who answers to the name, but there is a person who answers to the description, the person described is the beneficiary."

There was no one who answered to the name "Mabel Schneikert" but there was a person who answered the description "his wife, of Plymouth, Wisconsin." Alternatively, if the name "Schneikert" is ignored and only the name "Mabel" considered, the description, and the surrounding circumstances as well, point to Evelyn as the intended legatee.

In *Norton v. Jordan*, 360 Ill. 419, the court stated:

> "Where the ambiguity consists of a misnomer or misdescription * * * the false words may be stricken and if after these words are discarded a sufficient description remains, when interpreted in the light of surrounding circumstances to identify the object or subject of the testator's gift with certainty, the will may be read and construed with the false words eliminated."

Applying this rule of construction to the residuary bequest, "My beloved nephew Raymond Schneikert and Mabel Schneikert his wife, of Plymouth, Wisconsin," it is possible to strike the words "Mabel Schneikert" from the residuary bequest and have left a bequest to "Raymond Schiekert and his wife, of Plymouth, Wisconsin." On the other hand, effecuating a bequest to Mabel Reihs would require the insertion of many words. It would be necessary to substitute "Reihs" for "Schneikert," substitute "ex-wife" for "wife," and add after "Plymouth, Wisconsin" the words "and Sheboygan, Wisconsin, respectively." Where there are two descriptions in a will, one good and one bad, the latter may be rejected. (*Vestal v. Garrett* (1902), 197 Ill. 398, 64 N.E. 345.) A mistake in description may be corrected by rejecting that which is shown to be false, but no

words may be inserted in place of those stricken and no word or words may be supplied. *Graves v. Rose* (1910), 246 Ill. 76, 92 N.E. 601.

■■ The construction called for by the *Norton* rule coincides with the intent of the testatrix. The evidence suggests that Mrs. Johnson was primarily concerned with her nephew; the bequest to his wife was of secondary importance. Neither Mabel, his former wife, nor Evelyn, his present wife, were on intimate terms with her. She knew Mabel much longer than Evelyn but had spoken to her just once in the last thirteen years of her life. She knew her nephew had been divorced from Mabel for thirteen years and had been married to Evelyn for six. She met Evelyn only a year before she signed her will but she wrote to her and telephoned her; they accompanied each other to the Sheboygan birthday party and departed together; in her last illness she turned to Evelyn and, through a neighbor, asked for her help. Evelyn was on her mind at the time she executed her will, not Mabel. The mention of the name "Mabel" to the scrivener of her will would seem to have been inadvertent.

■■ Complaint is made that the court erred in admitting, over objection, the testimony of the pastor and attorney and further erred in permitting them to testify concerning questions asked of, and answers made by, Mrs. Johnson. Declarations of a testatrix as to what she intended are not admissible in interpreting a will. Neither witness, however, testified to any declaration by Mrs. Johnson that differed from the words in her will; in fact, what she told them was identical to the language found in the instrument. Where there is no ambiguity in a will, the testimony of the draftsman is inadmissible to show the testator's intention. (*Appleton v. Rea* (1945), 389 Ill. 222, 58 N.E.2d 854.) But the rule excluding the draftsman's testimony does not supersede the rule that parol evidence is admissible to explain a latent ambiguity. (*Coulam v. Doull* (1890), 133 U.S. 216.) The testimony of the draftsman or of a witness to a will is not in a special class, distinguishable from other permissible parol evidence.

The court did not err either in allowing the attorney and the pastor to testify or in overruling objections to specific portions of their testimony.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

McNAMARA, P. J., and McGLOON, J., concur.