Wallace S. Mason, Administrator d. b. n. with Will Annexed of Estate of Lillie Isabella Willis, Deceased, Appellee, v. Albert Willis, Executor of Will of Henry William Willis, Deceased et al., Appellants. The Salvation Army, Appellees.

Gen. No. 10,013.

the February term, 1945.
Released for publication July 27, 1945.

Heard in this court at
Opinion filed July 11, 1945.

STURTZ & EWAN, of Kewanee, for appellants; JAMES N. CUMMINGS, of Kewanee, of counsel.

REYNOLDS M. EVERETT, of Galva, for appellee.

THOMAS J. WELCH, of Kewanee, and MOSES, KENNEDY, STEIN & BACHRACH, of Chicago, for certain appellee; THOMAS J. WELCH, of Kewanee, and HERBERT H. KENNEDY, of Chicago, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

This cause is here by an appeal from a decree of the circuit court of Henry county, construing the fifth paragraph of the last will of Lillie Isabella Willis deceased, and ordering the subject matter thereof to be paid and distributed to the Salvation Army, an Illinois corporation.

The testatrix died at the City of Galva in Henry county, on February 11, 1941, and her will, dated May 28, 1921, was admitted to probate by the county court of that county. The second paragraph of the will devised and bequeathed the use and income of all of her estate to her only brother, Henry William Willis, for and during his natural life, and at his death, the principal to be distributed "as hereinafter provided."

Two small legacies, one of them to a cemetery, and the other to a Sunday school, are provided by the third and fourth paragraphs of the will. The fifth paragraph, here in controversy, provides:

"Fifth: All the rest, residue and remainder of my property, I give, devise and bequeath (after the death of my brother, and the payments of debts and bequests herein made) unto the Salvation Army of America, and I desire this bequest to be paid in money, the same to be used for such purposes as the Salvation

Army may desire. I am prompted to make this disposition of the residue of my estate because of the efficient and substantial help and assistance the Salvation Army gave to the American soldiers during the recent World War."

The sixth paragraph authorizes and requests the executor to sell and convey all of the testatrix's real estate for the purpose of paying the bequests made in the will, and the eighth paragraph provides:

"Eighth: I make the above disposition of my property for the reason that I am a Spinster, my father and mother are both dead, my nearest and dearest relative is my only brother, Henry William Willis, and after providing for his welfare, I feel that what little estate I have will do the most good by being given to Charity."

Shortly after the death of the testatrix's brother in 1943, the complaint in this cause was filed by the executor of her will, alleging an ambiguity and uncertainty in the meaning and intention of the fifth paragraph thereof, and asking for a decree construing the fifth paragraph, and fixing the rights of the defendants to the residue and remainder of the estate. The complaint alleges that at the time of the execution of the will and at the date of the testatrix's death there was no such corporation in existence as "The Salvation Army of America," but there were five separate and distinct corporations, each named "The Salvation Army," organized and existing under the laws of the States of New York, New Jersey, Michigan, California and Illinois, respectively; that each of them claims the residue and remainder of the estate, and that nothing in the will aids in identifying either of such corporations as the object of the testatrix's bounty; that the ambiguity may have created a condition whereby the deceased died intestate as to the residue and remainder of the estate; and that the executor and the beneficiaries of the will of the deceased brother of the testatrix also claim the same.

The answer of the executor of the deceased brother's estate and the beneficiaries thereof admits the allegations of ambiguity, and as an affirmative defense alleges that by reason thereof the fifth paragraph has no legal effect, and that the deceased died intestate as to the residue and remainder of her estate.

The answers of the defendant corporations allege their separate corporate existence, and the charitable character of the work performed by each .of them, and that each of them carries on the work in the State in which it is organized; that the national commander of the Salvation Army is the president of each of the corporations, and all work is performed under his supervision; that the Illinois corporation was the only corporation or organization which carried on the work of the Salvation Army in Illinois at the times mentioned; that the testatrix in her life time was acquainted with the work of the Illinois corporation in and about Galva, and on different occasions donated her time, services and money to its work. The answers deny that there is any ambiguity in the language of the fifth paragraph, or any intestacy; and allege that the decedent intended that the residue and remainder of her estate shall be paid and delivered to the Illinois corporation; and, in the alternative, that if the court should find that she intended that any of the other corporations should receive any part thereof, that each of them has, for a valuable consideration, assigned and transferred its rights to the Illinois corporation.

The executor died during the pendency of the suit, and the administrator d. b. n. with the will annexed was substituted as plaintiff. On the hearing, the separate corporate entities of the defendants, the charitable nature of their work, their exclusive activities in their respective territories, and that the work in Illinois was performed exclusively by the Illinois corporation, including the work at Galva and Kewanee, was proven; and written assignments of the interests, if

any, in the residue of the estate, of all the other corporations to the Illinois corporation, were produced in evidence.

The deposition of Lawrence C. Johnson (since deceased) who was the lawyer who drew the will and the executor thereof, shows that the testatrix said to him, at the time he prepared the will, that she desired her brother to have the use of all her property during his lifetime; and that after his death, and the payment of the two small legacies, the Salvation Army was to receive the entire residuary estate, because she was familiar with its work around Galva, and also because of the help and assistance the Salvation Army had given the American soldiers during the World War. A written memorandum prepared by him at that time corroborates his testimony.

A retired officer of the Salvation Army, who had been connected with it for 45 years, and who was the adjutant in charge of the corps office at Kewanee in 1917 and 1918, testified that he and his wife visited at Galva almost weekly for meetings and Salvation Army work; that he met the decedent within two or three weeks after coming to Kewanee; that she and his wife became great friends and visited each other in their homes; that the decedent often attended the Sunday meetings, and made a number of cash contributions to the work, sometimes $5, sometimes $10, and at Christmas time, $50; that she was also interested in the distribution of Christmas baskets by the Salvation Army among the poor, and that in the early part of the year 1918, she told him in substance: "Well, now I am giving you this, but when I pass out of the state of action, or pass out, I am going to give the Salvation Army a good donation in my will"; that in speaking of the war, she said: "If you want money at any time, I will gladly give it to help the boys"; that she was interested in the hospital work of the Salvation Army, and its work among fallen girls; and that she sometimes came to Kewanee by interurban and

sometimes friends brought her in a buggy. His testimony is not contradicted, and it is not discredited by the rigid and lengthy cross-examination to which he was subjected, nor by the testimony of witnesses produced by appellants, who testified in substance that the decedent was exceedingly economical in her contributions to charity; that they never saw her at any Salvation Army meeting, or heard her speak of any contributions to it; and that she seldom left home.

The claim that the testimony of the Salvation Army officer was incompetent because it was evidence of events and statements too long before the execution of the will, is untenable. The abstract does not disclose that any such objection was interposed in the trial court, and it cannot be raised here for the first time; and at any rate, the testimony was not incompetent, but its probative force was a question for the determination of the court. So, too, the claim that the testimony of Lawrence C. Johnson was incompetent because the subject matter was privileged, was not raised in the trial court, and cannot now be urged. Furthermore, although statements made by a testatrix to her attorney would be privileged if offered in evidence in a suit against her, they are not privileged after her death. (*Scott v. Harris,* 113 Ill. 447, 455; *Norton v. Clark,* 253 Ill. 557, 565.)

Courts of equity are jealous in their protection of gifts to charities and will not allow them to fail if a reasonable construction of the will permits. (*Smith v. Renne,* 382 Ill. 26, 29.) Gifts to charities are viewed with peculiar favor by the courts and every presumption consistent with the language used will be employed to sustain them (*Village of Hinsdale v. Chicago City Missionary Society,* 375 Ill. 220, 231; *Peek v. Woman's Home Missionary Society,* 304 Ill. 427, 436), and they will receive more liberal construction than a bequest to an individual. (*Mills v. Newberry,* 112 Ill. 123, 133; *Hitchcock v. Board of Home Missions of Presbyterian Church,* 259 Ill. 288, 293.)

■ Under the presumption that a testator intended to dispose of his entire estate, where a provision in a will is open to more than one construction, a construction resulting in intestacy as to any part of the estate will not be adopted, if by a reasonable construction, it can be avoided. (*Woman's Union Missionary Society of America v. Mead,* 131 Ill. 338, 358; 69 C. J. 91.)

■ It is also well settled that a misnomer in a will in designating the charitable organization to be benefited will not defeat the bequest if it can be reasonably shown that charitable organization was in fact intended by the testator, and when a charitable organization is designated in a will by an erroneous name, extrinsic evidence is always admissible to identify the charitable organization intended. (*Woman's Union Missionary Society of America v. Mead, supra; Norton v. Jordan,* 360 Ill. 419, 427–429; *Hitchcock v. Board of Home Missions of Presbyterian Church, supra,* page 294.) The same principle is laid down by the courts in numerous other jurisdictions, and in various textbooks.

■ Appellants' argument in this court that there is no ambiguity in the fifth paragraph of the will is inconsistent with and directly opposed to their answer to the complaint in the trial court where the ambiguity is expressly admitted. Cases cited by them that extrinsic evidence is never admissible to vary the intent clearly expressed in a will, and cases where the intention of the testator was clear and no ambiguity existed, or where the extrinsic evidence did not show that the testator had any interest in the claimants involved, or where the testator failed to designate any beneficiary, have no application here. The argument that because there was no such corporation as ''The Salvation Army of America,'' the bequest fails for uncertainty and the property became intestate, is conclusively answered contrary to their contention in

*Norton v. Jordan, supra,* at page 429, where, citing numerous authorities, the court held: "Where the ambiguity consists of a misnomer or misdescription, as in the present case, the false words may be stricken, and if after these words are discarded a sufficient description remains, when interpreted in the light of surrounding circumstances, to identify the object or subject of the testator's gift with certainty, the will may be read and construed with the false words eliminated." Discarding the words "of America," clearly leaves a gift to the Salvation Army; and there can be no doubt that the testatrix intended the Salvation Army should receive the residue of her estate. Although there were five existing corporations of that name, we think the evidence clearly shows that the testatrix intended the Illinois corporation as the object of her bounty, and in any event, the other corporations of the same name assigned their rights, if any, to it. The decree of the trial court was correct, and is affirmed.

*Decree affirmed.*