Continental Illinois National Bank and Trust Company of Chicago, Executor of Last Will and Testament and Codicil of Daniel D. Van Degrift, Deceased, Appellee, v. Art Institute of Chicago, Defendant, and Shriners Hospitals for Crippled Children et al., Appellants.

Gen. No. 44,967.

Heard in the second division of this court for the first district at the October term, 1950. Opinion filed October 17, 1950. Rehearing denied November 1, 1950. Released for publication November 2, 1950.

B. G. CLANTON, of Chicago, for certain appellant.

WALTER F. BOYE, of Chicago, for certain other appellant; ROBERT P. SMITH, of Washington, D. C., of counsel.

IVAN A. ELLIOTT, Attorney General, of Chicago, for certain appellee; ROBERT J. BURDETT, Assistant Attorney General, of Chicago, of counsel.

ECKHART, KLEIN, McSWAIN & CAMPBELL, of Chicago, for certain other appellee; PERCY B. ECKHART, WILLIAM A. McSWAIN and JOHN NEAL CAMPBELL, all of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

The Continental Illinois National Bank and Trust Company of Chicago, as executor and trustee, filed its

complaint in the circuit court of Cook county, asking for construction of the will and codicil and of an inter vivos trust made by Daniel D. Van Degrift.

The principal issue involves the disposition of the residuary income derived from the inter vivos trust and the will, both the Art Institute of Chicago (hereinafter called Art Institute) and the Shriners Hospitals for Crippled Children, Chicago unit (hereinafter called Shriners), claiming to be the sole beneficiary of this residuary income. The third defendant, Homer D. Chatmon, makes claim to a gift of $100 per month. His claim rests on the same theory as that of Shriners. The chancellor having found for the Art Institute, Shriners and Chatmon have appealed.

On October 16, 1930, Daniel D. Van Degrift (hereinafter referred to as Dr. Van Degrift, that being the manner of his designation both in the briefs and abstract) created an inter vivos trust, naming the Continental Illinois National Bank and Trust Company of Chicago as trustee (hereinafter called trustee). He deposited securities with the trustee which at the time of trial were valued at $354,000. He died on May 31, 1946, leaving a will and codicil, by the terms of which he bequeathed his property valued at $165,000 to the trustee under the inter vivos trust to become part of the corpus of the trust.

By Article Third of the trust instrument, he reserved the income for life, made a number of gifts to the Art Institute for specific purposes, and then gave the Art Institute the income from the remainder for the purchase of works of art. He reserved the right to amend the trust instrument by a writing to be signed and acknowledged by him and delivered to the trustee. Pursuant to that right, he made nine amendments before his death in 1946.

In February 1931, he cancelled Article Third and substituted a new Article Third, which made gifts to certain friends, relatives and charities, including

Shriners and Chatmon. However, he preserved the specific gifts and the gift of residuary income to the Art Institute, as set forth in the original instrument. In November 1931, he cancelled a subsection of Article Third, which gave $5,000 to Eleanor J. Shewell, and substituted a provision giving that amount to his niece, Mrs. Ethel Manley Long. Two other amendments, one adding to and one withdrawing property from the corpus, were made in November 1931.

On February 27, 1934, he cancelled Article Third as amended February 6, 1931 and November 11, 1931, and substituted a new Article Third, under the terms of which, after making gifts to various relatives and friends (including Chatmon, whose gift was increased from $50 to $100 per month for life), he gave the residuary income to Shriners. He ratified and confirmed the trust instrument as thus amended.

On February 19, 1936, he cancelled the amended Article Third and substituted a new article reinstating Art Institute as the beneficiary of the residuary income. The ratification clause approved and confirmed the trust instrument as theretofore from time to time amended.

On August 12, 1943, after referring in the preamble to the trust instrument, he cancelled subparagraph (2) of paragraph (b) of Article Third, which gave $5,000 to Thomas C. Van Degrift, and subparagraph (2) of paragraph (c) of Article Third, which gave $100 per month to Charles R. Van Degrift. He then ratified the agreement as dated October 16, 1930. No amendments were referred to.

On June 25, 1945, he made an amendment which constitutes the principal basis for the contention of appellants herein. This amendment starts with a preamble as follows:

"Know all Men by These Presents, that I, Daniel D. Van Degrift . . . exercising the right and power reserved to me . . . by the trust instrument . . .

dated October 16, 1930, as heretofore amended by amendments dated February 6, 1931, November 11, 1931, February 27, 1934, and August 12, 1943, do hereby amend said trust agreement in the following manner:''

Then, in specific words he cancelled paragraph (b) and subparagraphs (1) to (6) thereof, of Article Third as amended and substituted specific gifts to five relatives and friends. By a second paragraph, he gave Ethel Deacon Orr $200 per month, an increase from $100. By a third paragraph, he provided for the payment of taxes out of the principal of the estate. A ratification clause followed, in these words:

''As thus amended, I hereby ratify, approve and confirm said trust agreement dated October 16, 1930, as heretofore amended by amendments dated February 6, 1931, November 11, 1931, February 27, 1934, and August 12, 1943.''

It will be noted that although the 1936 amendment was in effect at that time, it was not referred to.

On September 7, 1945, he executed an amendment which in its preamble and in its ratification clause followed the June 25, 1945 amendment. In the body thereof, he cancelled a provision giving $5,000 to Samuel J. Hartt and gave that amount to Thomas C. Van Degrift, Jr.

The will, made on August 12, 1943, described the trust instrument as dated October 16, 1930 and as amended August 12, 1943. It referred to no other instrument. On September 7, 1945, he executed a codicil which described the trust instrument as the trust agreement of October 16, 1930, as amended February 6, 1931, November 11, 1931, February 27, 1934, August 12, 1943, June 25, 1945, and September 7, 1945. He then ratified and confirmed the will dated August 12, 1943, except as modified by the codicil.

Two questions arise in this case:

1. Was the gift of the residuary income to the Art Institute made by the amendment of February 19, 1936, expressly or impliedly revoked by the failure to refer to the 1936 amendment in the ratification clause of the June 25, 1945 amendment?

2. Did the residuary estate passing under the will and codicil of Dr. Van Degrift become part of the inter vivos trust, and did the 1936 amendment apply to the property passing under the will and codicil, as well as to the property comprising the corpus of the trust estate?

The trial court, over objection, admitted extrinsic evidence and found that the amendment of February 19, 1936 was a valid part of said trust instrument as amended and that the gift to the Art Institute was never revoked; that the decedent intended his residuary estate to become part of the corpus of the inter vivos trust, of which the 1936 amendment was a valid part, and that the 1936 amendment therefore applied to the property passing under the will and codicil.

The evidence reveals clearly that the omission of the 1936 amendment from the ratification clauses of the June 1945 and September 1945 amendments and the September 1945 codicil was the result of an error. In 1943, Mr. J. Leslie, assistant secretary of the trustee bank, had taken charge of this trust. He had succeeded H. J. Fairweather, who had charge at the time of the making of the trust and for some years thereafter. Leslie testified that when Dr. Van Degrift desired to make changes in the trust instrument, he would telephone or come in and tell him what they were. Leslie would then submit the requests to Hugh McCulloch, attorney for Dr. Van Degrift, for the preparation of the necessary documents. In June 1945, Dr. Van

Degrift talked with Leslie, who then sent McCulloch a letter, advising him of the doctor's desire to change the provision for Ethel Deacon Orr and to have taxes payable out of principal. Leslie also sent McCulloch his office file on the trust. By mistake, that file contained a copy of the 1934, but not the 1936, amendment. The original of the trust instrument and of the amendments were kept in the vault under audit control, subject to limited withdrawal, and that file of originals contained the 1936 amendment. McCulloch prepared the June 1945 amendment, but having before him only the 1934 amendment, he referred in the preamble and ratification clause to that amendment and not to the 1936 amendment. McCulloch had nothing to do with the making of the original trust or the 1936 and prior amendments.

The same procedure followed with respect to the September 1945 amendment, except that in that instance, a memorandum made by Dr. Van Degrift explicitly set forth what he wished amended at that time, to-wit: a substitution of his grandnephew, Thomas C. Van Degrift, Jr., in lieu of Samuel J. Hartt, for a gift of $5,000. Again, McCulloch in drafting the amendment for this substitution, included in the preamble and ratification clauses a reference to the 1934, but not to the 1936, amendment. At the same time he prepared a codicil to the will, also referring to the 1934, but not to the 1936, amendment. Both McCulloch and Leslie testified unqualifiedly to the foregoing facts, and they established conclusively that the 1936 amendment was omitted through error.

In view of the uncontroverted testimony of Leslie and McCulloch, there is little occasion to consider any additional evidence to establish the mistake. However, there is other evidence, including certain memoranda given by Dr. Van Degrift to McCulloch at the time he prepared the will. These show the Art Institute as

beneficiary of the residuary income. Argument on behalf of the Art Institute is that this establishes that Dr. Van Degrift still desired to retain the Art Institute as his residuary beneficiary. Appellants argue that such a document is not admissible. As we have said, we do not think it adds to the uncontroverted testimony and evidence heretofore discussed.

Appellants rest their case principally on the proposition that the June 25, 1945 amendment "bluntly and in unambiguous language" ratifies the 1934 amendment and specifically drops the 1936 amendment. The same language being repeated in the September 7, 1945 amendment, it is argued that this reinforces their position with respect to the effect of the June 25, 1945 amendment. Notwithstanding appellants' vigorous assertions to the contrary, this language is not an express and clear cancellation of the 1936 amendment and a revival of the 1934 amendment. All one needs to do is observe how Dr. Van Degrift expressly and clearly cancelled previous provisions and substituted new ones. He did this seven times—on February 6, 1931, November 11, 1931, February 27, 1934, February 19, 1936, August 12, 1943, and with respect to gifts to relatives and friends on June 25, 1945 and September 7, 1945. He stated affirmatively what he desired done, and relied on no preamble or ratification clause to express his intention in these instances. A careful examination of the documents in question will in itself reveal that Dr. Van Degrift never intended to revoke the 1936 amendment.

The preface to the June 1945 amendment on its face shows that its purpose was to set forth the existing status of the inter vivos trust and the source of the authority to amend. At that time, the 1936 amendment was a part of the trust instrument. In describing the status of the trust instrument in the preface, the draftsman by omitting the 1936 amendment and includ-

ing the amendment of 1934 demonstrated clearly that he did not have the 1936 amendment before him and did not know that it was then a part of the trust instrument. That he deliberately omitted the 1936 amendment is incredible. That he thus intended to revive the 1934 amendment is equally incredible. A lawyer starting out to cancel one amendment and revive another previously cancelled, does not in the preamble ignore the very amendment he is seeking to cancel, nor does he recite, as if it were already revived, the amendment he desires substituted. The ratifying clause in a document such as this is used by lawyers to make clear that the amendment made in the body of the instrument constitutes the only change intended and that except for such amendment, the status of the matter as it was prior thereto was to be maintained. The words, "ratify," "approve" and "confirm" are of synonymous import and are defined as follows: "to make valid or legally operative." Examples given in Webster's International Dictionary, 2nd edition, are: "The senate ratified the treaty." "The directors met to ratify the contract." The significant point is that these words are not to be construed as in themselves serving a dispositive or donative purpose, but as approving an existent contract, grant or donation. The connotation is that of further countenancing an act or instrument which at the time is in itself effective or requires only ratification to make it conclusively effective. It should not be irrelevant for judges to recognize those clauses of a document which are part of the lawyer's craftsmanship, and not the direct expression of a client's intention. Words in a preamble are such. So are words of the character found in the ratifying clause of the 1945 amendment. To give them the effect of changing the disposition of the bulk of a trust estate, when the body of the amendment is devoted to certain relatively minor changes, is to ignore reality and

experience. Thus, looking at the instrument itself, the ratification clause is not sufficient to manifest an intention to revoke the gift to the Art Institute and to substitute Shriners in lieu thereof.

Counsel makes considerable point of the fact that the June 1945 amendment cancels paragraph (b) and subparagraphs (1) to (6) of Article Third. He argues that this supports his position that the 1934 amendment was revived, because it contained a paragraph (b) with six subparagraphs, whereas the corresponding paragraph (b) of the 1936 amendment contained only three subparagraphs. However, as it stood at the time of the writing of the June 1945 amendment, the 1934 amendment had been explicitly cancelled and revoked by the 1936 amendment. If appellants' position is correct, then Dr. Van Degrift was again cancelling what had already been cancelled, or cancelling paragraphs of an article theretofore cancelled and revoked. The 1945 amendment cancelled all of paragraph (b) and, for good measure, added "and subparagraphs (1) to (6) thereof." We know, of course, that the reference to six subparagraphs was a mistake. The purpose of the amendment is readily fulfilled by a cancellation of paragraph (b) as it is in the 1936 amendment and substituting a new paragraph (b). This follows the direction of the June 25, 1945 amendment and does nothing more than omit the erroneous designation of the six subparagraphs. The amendment of September 7, 1945 repeats the error of the June 25, 1945 amendment and neither adds nor detracts from the force of what has already been said with respect to that amendment.

[1, 2] The rules which apply to the interpretation of contracts apply to the construction of trust instruments. *Olson v. Rossetter,* 399 Ill. 232, 238. Parol evidence is admissible to explain an obvious omission or words inconsistent with the general intent of the instrument. We consider this question in our discus-

633

sion of the will and codicil, and what is said in that respect is applicable *a fortiori* to the construction of the trust instrument.

If we follow the logic of appellants' argument, it would lead to no end of confusion in the construction of these instruments. The June 1945 amendment refers not only to the 1934 amendment but to the February 6, 1931 and the November 11, 1931 amendments. The February 6, 1931 amendment gave the residuary income to the Art Institute. That was cancelled by the 1934 amendment which, in turn as we know, was cancelled by the 1936 amendment. If the mere inclusion of one amendment and the omission of another in a ratification clause is to be given donative or dispositive effect, then we would have to revive the February 6, 1931, as well as the February 27, 1934 amendments. If we say that no such effect is to be given to the 1931 amendment, it is inescapable that it was included only as a matter of general description and that would also apply to the 1934 amendment. The August 1943 amendment in its ratification clause ratified the trust agreement of October 16, 1930 and referred to no amendments. Can we say that this had the effect of cancelling all the amendments? Why were cancelled amendments referred to in the various ratification clauses if it was intended that the ratification clause have the effect of cancelling amendments omitted and ratifying those named? In any event, these are matters that clamor for explanation and the extrinsic evidence gives it to us.

 In the light of our holding that at the time of the will and codicil the 1936 amendment was part of the inter vivos trust and that the Art Institute is entitled to the residuary income as provided in the 1936 amendment, what is the proper construction of the will?

 Under Article Fourth of the will, the remainder of the estate after provisions for the payment of debts,

funeral expenses, etc., was given to the trustee under the trust agreement of October 16, 1930, as amended August 12, 1943 to be received by him as a portion of the principal or corpus of the trust estate. By the codicil of September 7, 1945, Article Fourth was revised to read that this remainder was given to the trustee under the trust instrument of October 16, 1930, as amended February 6, 1931, November 11, 1931, February 27, 1934, August 12, 1943, June 25, 1945, and September 7, 1945. Thus, the doctrine of incorporation by reference becomes involved. The Illinois law has been laid down for us in a number of cases. It requires that the will should refer to the paper to be incorporated as being in existence at the time of the execution of the will in such a way as to reasonably identify the paper and to show the testator's intention to incorporate and make it a part of his will, and the document must in fact be in existence at the time of the execution of the will. *Wagner v. Clauson,* 399 Ill. 403 (1948); *Keeler v. Merchants Loan & Trust Co.,* 253 Ill. 528; *Friederich v. Wombacher,* 204 Ill. 72; *Eschmann v. Cawi,* 357 Ill. 379; *Bottrell v. Spengler,* 343 Ill. 476.

We find no cases in Illinois which pass on the validity of the incorporation of a revocable trust into a will. Neither in the trial court nor in this court has any party to this proceeding raised that question. We are therefore not passing upon it.

To meet the requirement that a will must incorporate documents *in existence,* it is the practice to make codicils whenever amendments to a trust instrument are made after the execution of the will, such codicils to refer to the amendment and to reaffirm the will. Undoubtedly, that was the reason the will referred to the August 1943 amendment of the trust instrument, and to no other amendments. This made it clear that the will had been executed after the August 12, 1943 amendment. All the other amendments to the trust instrument had been executed long prior thereto and

there was no need to refer to them. Likewise, the September 1945 codicil was made for the purpose of reaffirming the will after the 1945 amendments had been made. At that time, the draftsman again having before him the 1934 amendment, referred to it and to other amendments, but not having the 1936 amendment, did not refer to it.

If Dr. Van Degrift's essential purpose was to have his estate become part of the corpus of the trust, then a recitation in the codicil of the amendments made prior to the will served no purpose other than to describe the trust. It is admitted that the amendments of February 1931 and November 1931, both dispositive amendments, had been cancelled and revoked by subsequent amendments, yet these are referred to in the codicil. Why then did he not refer to the 1936 amendment, even assuming that it had been cancelled? The failure to include it was an error of description, stemming from the same source as the error in the 1945 amendments, and this will not defeat Dr. Van Degrift's intention to give his estate to the trustee, to become part of the corpus of the trust as it existed at the time of his death; that is, as amended in 1936. *Cahill v. Michael*, 381 Ill. 395; *Armstrong v. Armstrong*, 327 Ill. 85; *Appleton v. Rea*, 389 Ill. 222; *Mason v. Willis*, 326 Ill. App. 481; 57 Am. Jur. sec. 1113, p. 712 (1948 ed.).

█ Appellants contend that failure to refer to the 1936 amendment excludes it from the will pursuant to the cases on incorporation by reference. (*Supra.*) The 1936 amendment was at the time of the making of the will and codicil, a part of the trust instrument, as we have held. Dr. Van Degrift referred to the trust instrument and referred to it as amended, but in listing the amendments, as we have said, omitted the 1936 instrument. In all other respects save this, the incorporation by reference was adequate, and the only

636

question before us is whether the reference to the 1930 instrument with amendments was sufficient expression of Dr. Van Degrift's intention to incorporate the trust as it stood amended at the time of the making of the codicil. We are of the opinion that it was. If Dr. Van Degrift had referred to the 1930 instrument as amended, without listing the amendments, it would have been adequate reference to those amendments in existence and in effect prior to the time of the codicil. The error arose in enumerating the dates of the amendments, and that error is explained by the parol evidence.

In the construction of wills, the rule with respect to parol evidence is more stringent than in the case of contracts. The reason for it is obvious. Wills are required by law to meet certain requirements, and the parol evidence rule cannot be used to evade those requirements. However, in this case, Dr. Van Degrift's intention is apparent from the will and codicil, and is confused solely by the omission of the 1936 amendment from the codicil. Parol evidence is admissible to explain the omission and thereby identify the objects of his bounty. *Dahmer v. Wensler,* 350 Ill. 23; *LaRocque v. Martin,* 344 Ill. 522; *Bimslager v. Bimslager,* 323 Ill. 303; *Coon v. McNelly,* 254 Ill. 39; *Decker v. Decker,* 121 Ill. 341; *Bradley v. Rees,* 113 Ill. 327; *Norton v. Jordan,* 360 Ill. 419. The extrinsic evidence does not add to or detract from the will, but makes clear Dr. Van Degrift's intention.

Appellant Chatmon argues that failure to account for a duplicate of the 1936 amendment creates the presumption that it was revoked. He cites the case of *In re Estate of Holmberg,* 400 Ill. 366. In that case, the testatrix executed two copies of a will. She delivered one to friend and kept one. At her death, it was found that the copy which she kept had the word "void" written across the first page, with her sig-

nature. The court held this to be a revocation. This is very different from the instant case. The trust agreement provided specifically that changes in the trust were to be made by instruments duly executed, acknowledged and delivered to the trustee. Once the 1936 amendment had become part of the trust, the trust could not thereafter be changed, except in the manner provided by its terms.

█ Appellants argue that the Art Institute in its pleading averred that there was no ambiguity, and that therefore it is now estopped from asserting that there is a latent ambiguity here. This is not a literally correct statement of the pleading. However, the complaint was filed for proper construction of the trust and will, and it is the duty of this court to construe the instruments in such manner as may be found to be proper and correct. The court in construing the will is not limited to the contentions in the written pleadings. *Jackman v. Kasper,* 393 Ill. 496; *Smith v. Burt,* 388 Ill. 162; *Gridley v. Gridley,* 399 Ill. 215, 221.

We have not undertaken to distinguish the cases cited by appellants. We have examined them, but do not think they support appellants' position. Comfort can always be found in the general language used by courts in the multitude of opinions written in will cases. Cases involving the construction of wills do not have the controlling force of precedents as in other cases. *Cahill v. Michael, supra,* p. 400. It is recognized that wills are found in a great variety of forms and executed under circumstances peculiar to each individual case. *Walker v. Walker,* 283 Ill. 11; *Smith v. Garber,* 286 Ill. 67. The intention is the all-controlling factor, and this is in our opinion so firmly established in favor of the Art Institute that affirmance of the decree must follow.

*Decree affirmed.*

FRIEND and SCANLAN, JJ., concur.