*In re* ESTATE OF ARTHUR E. BECK, Deceased (Lutheran Family and Children's Services of Missouri, Petitioner-Appellant, v. Dorothy L. Roethe, Ex'x of the Estate of Arthur E. Beck, Deceased, Respondent-Appellee).

Fifth District   No. 5—94—0246

Opinion filed May 12, 1995.

Robert L. Jackstadt, of Peper, Martin, Jensen, Maichel & Hetlage, of Belleville, for appellant.

Edward J. Kionka, of Carbondale, and Ronald D. Stanley, of Columbia, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Lutheran Family and Children's Services of Missouri, appeals from an order of the circuit court of Perry County which determined that petitioner was not a successor to the Lutheran Orphan Home, the named legatee, and therefore had no right to one-fourth of the residuary estate of decedent, Arthur E. Beck. Petitioner contends that: (1) the trial court improperly construed article 7 of the will when it determined that the bequest of one-fourth of the decedent's residuary estate to the Lutheran Orphan Home lapsed; and (2) the trial court erred when it denied petitioner's motion for attorney fees. We affirm.

I

Arthur E. Beck died testate on September 8, 1989. His will, executed on April 29, 1982, and the codicil, executed July 1989, were

admitted to probate in the circuit court of Perry County on September 19, 1989. Dorothy L. Roethe, decedent's niece, was appointed executrix of his estate. Roethe is also respondent herein. On June 10, 1992, a partial distribution of the residual estate was made to three of the residuary legatees. No payment was made to Lutheran Orphan Home because the executrix had determined that a latent ambiguity existed with respect to the orphan home. The executrix concluded that because no entity named Lutheran Orphan Home, Paris, Missouri, ever existed, the bequest to that legatee lapsed.

The clause relevant to the controversy here is article 7 of decedent's will. It directs payment of the residue of the estate to four Lutheran organizations which include: Southern Illinois District Church Extension Fund, Trinity Lutheran Church at Conant, Lutheran Laymen's League, and Lutheran Orphan Home, Paris, Missouri. Each legatee is to receive one-fourth of the residuary estate. The testator provided that should any of the named legatees merge with or be succeeded by another organization, "then the share above bequeathed to such legatee shall go to the organization resulting from such merger or succession." Further, should a bequest to any legatee named in article 7 lapse, the testator provided for an alternative distribution scheme. Additionally, article 7 provides that the executor is to determine whether any legatee named in article 7 has merged, been succeeded, or ceased to exist. The executor's determination would be binding on all legatees.

On December 14, 1993, respondent filed a petition for leave to make distribution. Petitioner filed an answer and objection to respondent's petition. The trial court held a hearing on petitioner's objections in January 1994.

At the hearing, Lloyd Middleton, decedent's attorney, testified that he drafted all of decedent's wills, which include the will at issue here and three previous wills dated July 19, 1966, December 19, 1975, and April 9, 1979. Each of the wills included a residuary clause which disposed of the residue between four Lutheran organizations. The Lutheran Orphan Home, Paris, Missouri, first appeared in the second (1975) will. This will contained similar language regarding contingencies if a legatee had merged with or been succeeded by another organization. Middleton testified that, in preparing the first (1965) will, he wrote to each of the four proposed residuary beneficiaries to verify their status and to ensure that each was correctly named in the will. However, in the second (1975) will in which Lutheran Orphan Home, Paris, Missouri, was named as a residuary beneficiary, Middleton did not verify its status and name. Middleton stated that he did not verify the orphanage's status because the testa-

tor and his wife were both present at the conference on that will and Mrs. Beck provided written information to Middleton which sufficiently verified that the orphanage was correctly described by the phrase used in the will—Lutheran Orphan Home, Paris, Missouri. Middleton recalled that the documents were printed and that "some of them were possibly in the nature of solicitations." According to Middleton, neither the testator nor his wife ever discussed an orphanage in Des Peres, Missouri. Furthermore, Middleton testified that the phrase "Lutheran Orphan Home, Paris, Missouri," definitively expressed the testator's intention.

Regarding the history of the orphanage, the Lutheran Orphan Home, Des Peres, Missouri, was erected in 1868 and was operated by the Society of the German Lutheran Hospital and Asylum (the Society). Sometime in 1914, the Society changed its name to Lutheran Charities Association of St. Louis, Missouri. The Lutheran Orphan's Home was operated by the Society for Homeless Children under the umbrella of the Lutheran Charities Association. Specifically, the Lutheran Charities Association operated the orphanage as a separate branch and with a separate board. On June 24, 1964, a deed was executed by Lutheran Charities Association conveying the property on which the Lutheran Orphan Home was located to Lutheran Children's Services, which subsequently became known as Lutheran Family and Children's Services. During 1967, the Lutheran Orphan Home closed. Thus, in 1982 when the final will was executed, the Lutheran Orphan Home had ceased operations. To date, petitioner has not operated an orphanage in Missouri. The record further reveals that an entity named Lutheran Orphan Home, Paris, Missouri, never existed. The orphanage at Des Peres was the only orphanage ever operated under the auspices of the Lutheran Charities Association in the State of Missouri.

On March 11, 1994, the trial court entered its order finding that the residuary bequest to the Lutheran Orphan Home had lapsed, and the court denied petitioner's motion for attorney fees. Petitioner appeals.

## II

The first issue presented for our review is whether the trial court erred in determining that the bequest of one-fourth of the decedent's residuary estate to the Lutheran Orphan Home lapsed. We agree with the trial court's finding that the gift to the defunct Lutheran Orphan Home lapsed.

In construing a will, the court's fundamental concern is ascertaining the intent of the testator, as determined from the provisions of

the will, which will be given effect if not contrary to law or public policy. (*Continental Illinois National Bank & Trust Co. v. Bailey* (1982), 104 Ill. App. 3d 1131, 1136, 433 N.E.2d 1098, 1101; *First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 513, 426 N.E.2d 1198, 1201.) When a will has been reexecuted, the testator's intent is determined in light of the circumstances existing at the time of the reexecution. (*First National Bank*, 85 Ill. 2d at 514, 426 N.E.2d at 1201.) To determine the testator's intent, "the court must consider the plain and ordinary meaning of the words used [citations], and the intent must be ascertained by considering the entire document." *First National Bank*, 85 Ill. 2d at 514, 426 N.E.2d at 1201.

When there is a mistake in the name or description of a legatee, or if a latent ambiguity exists as to the identity of a legatee, extrinsic evidence may be considered to determine the identity of the intended recipient. (*In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 388, 359 N.E.2d 109, 112.) If the ambiguity consists of a misdescription, the false words may be stricken. (*Mason v. Willis* (1945), 326 Ill. App. 481, 488, 62 N.E.2d 135, 138.) Further, as the *Mason* court explained, quoting *Norton v. Jordan* (1935), 360 Ill. 419, 429, 196 N.E. 475, 480:

> " '*** [I]f after these words are discarded a sufficient description remains, when interpreted in the light of surrounding circumstances, to identify the object or subject of the testator's gift with certainty, the will may be read and construed with the false words eliminated.' " *Mason*, 326 Ill. App. at 489, 62 N.E.2d at 138.

The bequest to the "Lutheran Orphan Home, Paris, Missouri," first appeared in decedent's second will that was executed in 1975. In this will, the testator amended article 7, substituting the "Lutheran Orphan Home, Paris, Missouri," for the gift to "The Lutheran Church—Missouri Synod Foundation." The language of article 7, in which the bequest to the Lutheran Orphan Home, Paris, Missouri, is found, remained unchanged in all subsequent reexecutions of the will.

The language of article 7 states:

> "I bequeath all the rest, residue and remainder of my estate to the following named legatees in the proportions set opposite their respective named:
>
> To Southern Illinois District church Extension Fund, located at Hoyleton, Illinois—¹/₄th;
>
> To Trinity Lutheran Church at Conant, R.F.D. 3, Pinckneyville, Illinois—¹/₄th;
>
> To Lutheran Laymen's League, a non-profit Missouri Corporation of St. Louis, Missouri, for the support of 'The Lutheran Hour' or other missionary activity—¹/₄th;

To Lutheran Orphan Home, Paris, Missouri—1/4th.

In case any legatee named in this Article shall merge with or be succeeded by another organization prior to my death, then the share above bequeathed to such legatee shall go to the organization resulting from such merger or succession.

In case any legatee named in this Article is not so merged or succeeded and does not exist at my death, then the bequest to such legatee shall lapse, and the share bequeathed to such legatee shall be disposed of as follows:

I bequeath 1/5th of such share to the persons named in Article 3 and such portion shall be divided in the proportions and in the manner provided in that Article.

I bequeath 4/5ths of such share to the persons named in Article 4 and such portion shall be divided in the proportions and in the manner provided in that Article.

I authorize and empower the Executor acting under this Will to determine whether any legatee named in this Article has merged, been succeeded or ceased to exist; to determine the name and identity of its successor, if any; and if any such legatee is incorrectly named, to determine the name and identity of the legatee intended to be benefited. All such determinations by the Executor shall be binding on all legatees, devisees or other persons named in or taking under this Will."

At the hearing, evidence regarding the status of the Lutheran Orphan Home, Paris, Missouri, was presented.

Attorney Middleton, decedent's attorney who drafted decedent's wills, testified that decedent changed his 1975 will to include a bequest to the Lutheran Orphan Home, Paris, Missouri. As explained above, Middleton did not verify the status of the orphanage because Mrs. Beck, the testator's wife, presented him with printed documents with the name Lutheran Orphan Home, Paris, Missouri. Middleton stated that he did not retain any copies of these documents and that he was well acquainted with Des Peres, Missouri, and did not mistake Paris, Missouri, for Des Peres.

Further evidence adduced at the hearing indicates that the Lutheran Orphan Home, Paris, Missouri, did not exist at the time of the testator's bequest in 1975 nor at his death in 1989. Most importantly, the only Lutheran orphanage in operation during the testator's lifetime was the Lutheran Orphans' Home in Des Peres, Missouri. This orphanage closed in 1967, and no other orphans' home has been maintained by any other Lutheran charity in the State of Missouri. Additionally, there was disputed testimony regarding the decedent's awareness of the Lutheran Orphans' Home in Des Peres. Considering the evidence presented to the court, the trial court

concluded that there was a misdescription of the legatee, and the court struck the word "Paris" from the bequest, thereby finding that the phrase "[t]o Lutheran Orphan Home, Missouri" expressed the testator's intent. Eliminating the word "Paris" makes clear the testator's intent to make the bequest to the Lutheran Orphans' Home in Des Peres, Missouri. We believe there is ample evidence in the record to support the trial court's determination that the testator intended to make the bequest to the Lutheran Orphan Home in Des Peres.

Turning our attention to the issue of whether the gift to the Lutheran Orphan Home lapsed, the trial court concluded that the Lutheran Orphan Home of Missouri has not been succeeded by or merged with another organization. Therefore, the gift to Lutheran Orphan Home lapsed. The trial court noted that the orphanage ceased to exist in 1967 or 1968 and that petitioner has not maintained an orphanage in Missouri since the closure of the Des Peres facility. Conversely, petitioner argues that petitioner is a successor to the Lutheran Orphan Home because petitioner succeeded to all the assets used in the operation of the orphanage and petitioner is devoted to the same purposes as those of the Lutheran Orphan Home. We are unpersuaded by petitioner's contentions.

In analyzing article 7 of decedent's will, it is apparent that the testator intended to limit his gift to the Lutheran Orphan Home. Article 7 of decedent's will provides, in pertinent part:

"In case any legatee named in this Article shall merge with or be succeeded by another organization prior to my death, then the share above bequeathed to such legatee shall go to the organization *resulting from* such merger or succession." (Emphasis added.)

■ In construing this provision, we believe the significant phrase here is "resulting from." This phrase indicates that the organization succeeding to the Lutheran Orphan Home must be similar in purpose and function to the orphanage. Petitioner provides services such as foster care, adoption, counseling for families, and medical care for at-risk infants, which are very commendable; however, they are not in the nature of services provided by an orphanage and cannot be construed as such. Furthermore, this provision makes clear that the testator intended his bequest to directly benefit the children at the orphanage and not an organization which provides general child welfare services to the community. If the testator had intended to generally benefit a Lutheran charity that assisted children and families through general services, he could have made a specific bequest to petitioner, which existed at the time of the 1982 reexecution of the will.

Petitioner further contends that it is the successor to the Lutheran Orphan Home because it acquired the assets of the orphanage. While petitioner may have acquired the assets of the now-defunct orphanage, this provision requires more than the mere acquisition of the orphanage's real property. It requires that the resulting organization continue providing if not the same, then similar, services to those provided by the orphans' home.

■ Finally, the doctrine of *cy pres* is not applicable here. The failed charitable bequest does not manifest a general charitable intent, and the testator provided for an alternative disposition in the event the bequest to the Lutheran Orphan Home should fail. (*Estate of Tomlinson*, 65 Ill. 2d at 389, 359 N.E.2d at 112.) Accordingly, we conclude that there is ample evidence to support the trial court's determination that the bequest of one-fourth of the decedent's residuary estate to the Lutheran Orphan Home lapsed.

### III

The remaining inquiry is whether the trial court improperly denied petitioner's motion for attorney fees. Petitioner maintains that its motion for attorney fees should have been granted because the trial judge found a latent ambiguity in the decedent's will and there was an honest difference of opinion regarding the construction of the will. We disagree.

Generally, the parties to a suit bear the cost of their attorney fees and litigation expenses absent a contract or statute to the contrary. (*Merchants National Bank v. Old Second National Bank* (1987), 164 Ill. App. 3d 11, 16, 517 N.E.2d 652, 656.) However, in the context of a will construction, attorney fees are recoverable where the testator's intentions are so ambiguous as to require judicial construction of the will to resolve adverse claims. (*Merchants National Bank*, 164 Ill. App. 3d at 16, 517 N.E.2d at 656.) "While the award of attorney fees is a matter within the sound discretion of the trial court, fees will not be allowed where construction is not necessary." (*Estate of Knight v. Knight* (1990), 202 Ill. App. 3d 258, 262, 559 N.E.2d 891, 894.) The test is whether there is an honest difference of opinion regarding construction of the will. (*Merchants National Bank*, 164 Ill. App. 3d at 16, 517 N.E.2d at 656.) Lastly, the losing party who decides to appeal does so at his own risk and is not entitled to attorney fees and costs. *Estate of Knight*, 202 Ill. App. 3d at 262, 559 N.E.2d at 894.

●3 Here, the language used in article 7 of decedent's will was not so ambiguous as to necessitate judicial construction of the provision. The testator's intentions were evident and readily discernible from the language used in the provision in question. Petitioner was not

named as a legatee under the will, and as demonstrated above, petitioner certainly cannot be said to be a successor to the defunct orphanage. Petitioner is a separate and distinct entity and is not engaged in activities similar to those of an orphanage. Moreover, the decedent clearly considered the possibility that the bequest to the Lutheran Orphan Home might fail and provided that any lapsed gift be disposed of pursuant to his specific instructions. There is no inconsistent language present in article 7 that would create such ambiguity as to necessitate a will construction suit, an appeal, and reimbursement of attorney fees from the estate. Accordingly, we find that the trial court properly denied petitioner's motion for attorney fees.

For the foregoing reasons, the judgment of the circuit court of Perry County is affirmed.

Affirmed.

RARICK and WELCH, JJ., concur.