TRUSTEES OF WHEATON COLLEGE, as Trustee, Plaintiff-Appellee, v. MARY BEAUMONT PETERS, Indiv. and By and Through her Guardian, Philip B. Peters, *et al.*, Defendants and Counterplaintiffs-Appellees (Mary Beverley Peters Hunton, Defendant and Counterdefendant-Appellant).

Second District    No. 2—96—0746

Opinion filed March 5, 1997.

John D. Gutzke and Robert M. Criswell, both of Rolewick & Gutzke, P.C., of Wheaton, for appellant.

Kevin J. Todd and Bruce J. Van Heukelem, both of Hoogendoorn, Talbot, Davids, Godfrey & Milligan, of Chicago, for appellees Mary Beaumont Peters and Philip B. Peters.

Timothy C. Klenk and Christian M. Poland, both of Ross & Hardies, of Chicago, for appellee Trustees of Wheaton College.

JUSTICE McLAREN delivered the opinion of the court:

On February 17, 1987, Laura Bertha Catherine Peters Warner executed a revocable trust. The trust identifies five beneficiaries: defendant and counterplaintiff, Philip B. Peters, Gayle Peters Emerson, Vincent P. Peters, Stuart Davis Peters, and "Mary Beverly Peters." In particular, the trust identifies "Mary Beverly Peters, Rt. 4, Box 160, Spotsylvania, Va. 22553." The instrument creating the trust names the plaintiff, Trustees of Wheaton College (trustee), as the trustee. Ron Walton, a planned-giving officer of Wheaton College, assisted Warner in the planning of her estate.

Of the five beneficiaries named, only the "Mary Beverly Peters" beneficiary designation is at dispute in this case. Notwithstanding

"Mary Beverly Peters," every other named beneficiary is either Warner's niece or nephew, or a child of a niece or a nephew who predeceased Warner. Defendant and counterplaintiff, Mary Beaumont Peters (Peters), is Warner's niece. Defendant and counterdefendant, Mary Beverley Peters Hunton (Hunton), is the daughter of Warner's nephew, defendant and counterplaintiff, Philip Peters.

Philip Peters is Mary Beaumont Peters' brother and guardian. Peters has been physically and mentally handicapped since childhood. Peters has identified herself as Mary Beaumont Peters and Mary B. Peters since the date of her birth, February 19, 1929. Further, from 1967 until March 1988, Peters lived at Route 4, Spotsylvania, Virginia. Between 1967 and April 1986 her mailing address was Box 160; although she did not change residences, sometime between April 1986 and April 1987 her mailing address was changed to Box 1360.

Hunton, born March 19, 1949, is the daughter of Philip Peters. At birth, Hunton was given the name Mary Beverley Peters. However, she has not identified herself as such since 1974, when she married. Since 1974, she has used the names "Mary Beverley Peters Hunton," "Mary Peters Hunton," and "Mary P. Hunton." Further, Hunton never lived in Spotsylvania, Virginia, and has never claimed Route 4, Box 160, Spotsylvania, Virginia, as her home or address. In addition, Hunton had no contact with Warner after September 1974, the date of her marriage.

After Warner's death, David Teune, a lawyer for the trustee, wrote Eppa Hunton, Hunton's husband, who was serving as counsel for certain beneficiaries of the trust. Mary Hunton later retained new counsel. The trustee's lawyer asked Eppa Hunton for the social security numbers of the named beneficiaries, including "Mary Beverly Peters." Eppa Hunton responded with a letter, which provided in part:

> "In the trust agreement, one of the beneficiaries is named Mary Beverly Peters. However, it is my belief that the intended beneficiary is Mary Beaumont Peters. The latter is a sister of Philip[,] Gayle and Peyton Peters. *** Mary Beverl[e]y Peters is the daughter of Philip Peters. Incidentally, Mary Beverl[e]y Peters is my wife. Mary Beaumont Peters formerly lived at Rt. 4, Box 160[,] Spotsylvania and then moved to Richmond. Mary Beverl[e]y Peters never lived in Spotsylvania.
>
> It would be 'normal' for [Warner] to have divided the trust into four shares for the four children of her brother who were living or left living heirs. By leaving $1/4$ interest to Mary Beaumont Peters and not Mary Beverl[e]y Peters, that pattern is maintained."

On December 8, 1992, Teune responded to Eppa Hunton's letter, stating that the trustee also believed the intended beneficiary to be Peters and not Hunton. In the letter, Teune asked Eppa Hunton to obtain his wife's signature on a waiver of interest in the Warner trust.

In March 1993, Hunton, Hunton's husband, Eppa, and Hunton's father, Philip, met to discuss why Hunton had not signed the waiver of interest. In an affidavit, Philip stated that he explained to Hunton why he believed that Peters was the intended beneficiary. Philip stated that he told Hunton that Warner had a special concern for Peters. Philip also stated that he told Hunton that Warner always inquired about Peters' well-being but never asked about Hunton.

Hunton refused to sign the waiver of release and took the position that she, rather than Peters, was the intended beneficiary. On July 16, 1993, the trustee filed an amended interpleader complaint, which explained that both Peters and Hunton claimed to be the intended beneficiary of the Peters' portion of the trust. The trustee asked the court to decide which of the defendants was the intended beneficiary. Before the trial court heard the evidence in this case, Hunton filed numerous motions, including a motion to strike the amended complaint, a motion to dismiss Peters' reply brief, a motion *in limine* to bar certain evidence, a motion to dismiss Peters' amended counterclaim, and a motion to strike Peters' motion for summary judgment.

On October 12, 1994, the trial court determined that there was a latent ambiguity in the Warner trust as to the beneficiary identified as "Mary Beverly Peters." On February 29, 1996, the trial court granted Peters' motion for summary judgment and denied Hunton's cross-motion for summary judgment. Further, the trial court denied Hunton's petition for the payment of her attorney fees in the amount of $66,675.32.

The trial judge stated as follows:

> "At the inception [of this case], I ruled that there was latent ambiguity, since the name on the trust documents could arguably apply to both Mary Beverley Peters and Mary Beaumont Peters because of the address that was listed. ***
>
> ***
>
> It was only after reading all of [the] stipulations and the voluminous evidence that I reached the inescapable conclusion that Laura Warner's testamentary intent or her intent in formulating the trust documents was to benefit Mary Beaumont Peters, and I think that the evidence on that issue was overwhelming.

> However, it was only after the culmination of this lengthy litigation that I arrived at that conclusion.
>
> I have reviewed that attorney's fees which are sought, and I believe that they are not unreasonable, given the ambiguity, as a matter of law and the voluminous discovery that was necessary to determine Laura Warner's intent.
>
> However, as Mr. VanHeukelem says, the reality is that this trust corpus was only about $250,000.
>
> In reviewing all of these pleadings and documents which were submitted, I believe that this is a matter addressed to the sound discretion of the court.
>
> But under the factual circumstances which have been presented and the overwhelming amount of evidence as the intent of Laura Warner, I will exercise my discretion to deny the fee petition of Mary Beverley Peters Hunton."

Hunton appeals only the denial of attorney fees.

■ Absent a contract or statute to the contrary, the parties to a suit bear the cost of their attorney fees. *In re Estate of Beck*, 272 Ill. App. 3d 31, 38 (1995). An exception exists in the context of a will construction where the testator's intentions are so ambiguous as to require judicial construction of the will. *Beck*, 272 Ill. App. 3d at 38. In such a case, attorney fees are recoverable from the estate. However, an ambiguity, alone, is not enough. Rather, there must be an honest difference of opinion regarding the construction of the will. *Beck*, 272 Ill. App. 3d at 38. The decision to grant or deny attorney fees in a will construction case lies within the sound discretion of the trial court. *Beck*, 272 Ill. App. 3d at 38. Accordingly, a reviewing court may not disturb the decision to deny attorney fees absent an abuse of discretion. *Northern Trust Co. v. Heuer*, 202 Ill. App. 3d 1066, 1071 (1990).

In *Beck*, 272 Ill. App. 3d 31, the Appellate Court, Fifth District, held that it was not an abuse of discretion to deny attorney fees in a will construction case that involved a latent ambiguity. The will devised a portion of the estate to the Lutheran Orphan Home, Paris, Missouri. However, such an entity never existed. The only Lutheran orphanage that ever existed in Missouri was located in the town of Des Peres. The orphanage was conveyed to Lutheran Children's Services, which later closed the orphanage and changed its name to the Lutheran Family and Children's Services. At the time of the decedent's death, the orphanage did not exist and no successor was named. The trial court held that there was an ambiguous misdescription contained in the will and that the bequest to the Lutheran Orphan Home had lapsed. *Beck*, 272 Ill. App. 3d at 36-37. The trial

court also denied Lutheran Family and Children's Services' request for attorney fees. *Beck*, 272 Ill. App. 3d at 34.

The Appellate Court, Fifth District, affirmed the trial court's decision. Regarding the denial of attorney fees, the court reasoned:

> "Here, the language used in article 7 of decedent's will was not so ambiguous as to necessitate judicial construction of the provision. The testator's intentions were evident and readily discernable from the language used in the provision in question." *Beck*, 272 Ill. App. 3d at 38.

■ The reasoning applied in *Beck* is equally applicable to the case at bar. Although Warner used the name "Mary Beverly Peters," her intentions were "evident and readily discernable from the language used in the provision in question." *Beck*, 272 Ill. App. 3d at 38. The provision identified "Mary Beverly Peters [at] Rt. 4, Box 160, Spotsylvania, Va. 22553." Mary Hunton never lived in Spotsylvania. Further, she had not used the name Mary Beverley Peters since 1974. In addition, she had no contact with Warner, knew that her inclusion as a beneficiary would have been contrary to the trust's scheme, knew that her husband and the trustee did not believe she had a claim, knew of Warner's special concern and relationship with Peters, and failed to present any evidence to support her claim. In essence, there is nothing in the record to support Hunton's contention that she had an honest belief that she had a valid claim to the trust assets.

We recognize that Warner could have drafted the will to avoid the apparent inconsistency challenged by Hunton. However, "few instruments are drafted with perfect precision and [Warner's] intentions were nevertheless easily discernible from the language [she] used" and from facts that were available to Hunton prior to this litigation. See *Merchants National Bank v. Old Second National Bank*, 164 Ill. App. 3d 11, 16 (1987). Thus, we refuse to equate an easily discernible error in drafting "with an ambiguity necessitating a will construction suit and reimbursement of attorney fees." *Merchants National Bank*, 164 Ill. App. 3d at 16. Accordingly, we determine that the trial court's decision to deny attorney fees is not an abuse of discretion.

We recognize that the trial court did not make an express finding that Hunton's opposition was not based on an honest difference of opinion. However, it is well established that a reviewing court may affirm a trial court's decision on an issue on any basis appearing in the record. *Bartoszewski v. Village of Fox Lake*, 269 Ill. App. 3d 978, 986 (1995). Because the record contains overwhelming evidence that Hunton could not honestly believe that she had a valid claim to the trust assets, we affirm the trial court's denial of attorney fees.

Hunton cites to *Ingalsbe v. Gough*, 2 Ill. App. 3d 681 (1971), to support her argument. However, *Ingalsbe* is distinguishable from the case at bar. In *Ingalsbe*, an ambiguity arose due to an amendment to an antilapse statute that had yet to be interpreted. *Ingalsbe*, 2 Ill. App. 3d at 683. The case at bar did not turn on the interpretation of newly enacted legislation. Rather, the case involved a question of fact, which was easily determined after the trial judge examined the evidence. Further, many of the salient facts were known to Hunton before discovery. Thus, *Ingalsbe* is inapplicable to the case at bar.

Hunton also argues that fees are appropriate in this case because the trustee filed suit naming Hunton as a defendant. However, Hunton ignores the fact that the trustee's suit was necessary only because Hunton opposed the trustee's intended distribution by refusing to sign a release. Thus, we are not persuaded by this argument. See *Merchants National Bank*, 164 Ill. App. 3d at 17.

In addition, Hunton claims that the trial court erroneously based its decision to deny attorney fees on the fact that Hunton was not the successful party. Hunton cites the following remarks made by the trial judge to support her claim:

"But under the factual circumstances which have been presented and the overwhelming amount of evidence as the intent of Laura Warner, I will exercise my discretion to deny the fee petition of Mary Beverley Peters Hunton."

The trial judge's remarks do not support Hunton's claim. Instead, her remarks indicate a belief that, because the evidence was so overwhelming, it is unlikely that Hunton honestly believed that she had a valid claim to the Warner trust.

Hunton also contends that the trial court's refusal to grant attorney fees will have a chilling effect on potential heirs who lack the funds to litigate. We disagree. Instead, we believe that allowing attorney fees in a case involving the interpretation of a will that contains mildly inconsistent language "would invite heirs-at-law to challenge every will without financial risk, regardless of the clarity of the testamentary scheme, on the outside chance of having it declared invalid." *Merchants National Bank*, 164 Ill. App. 3d at 16-17.

Finally, Hunton claims that the trial court's decision denying attorney fees should be reversed because the trial judge erroneously considered the size of the portion of the estate at issue. Initially, we disagree with Hunton that an award of attorney fees is taken from the entire estate. It is well settled that an award of attorney fees comes out of the share of the estate at issue. *Orme v. Northern Trust Co.*, 25 Ill. 2d 151, 167 (1962). However, we agree with Hunton that,

in determining whether or not to grant attorney fees in a will construction case, the sole issue is whether there is an honest difference of opinion. *Beck*, 272 Ill. App. 3d at 38. Further, we recognize that the trial court may have erroneously considered the size of the estate share in controversy when reaching this decision. However, we may affirm on any basis appearing in the record. *Bartoszewski*, 269 Ill. App. 3d at 986. Because we have determined that there is ample evidence in the record to affirm the trial court's decision to deny attorney fees, Hunton's argument is immaterial.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and DOYLE, JJ., concur.